UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RHONDA HALL,                 ) <br>        Plaintiff,   ) <br> v.          ) <br>           ) <br> VERIZON COMMUNICATIONS, INC., and ) <br> VERIZON NEW ENGLAND, INC.    ) <br>           ) <br>        Defendants.   ) | CIVIL ACTION NO. 05-30002-MAP <br><br><br><br><br><br><br> NOVEMBER 17, 2006 |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR**
**<u>MOTION FOR SUMMARY JUDGMENT</u>**

In her brief opposing summary judgment, Plaintiff fails to address Verizon's legal arguments, and instead recites a long litany of undated facts that Verizon has taken as true for purposes of this motion and that do not defeat Verizon's legal arguments in favor of summary judgment. As more fully explained herein: (1) Plaintiff's claims of co-worker harassment fail because it is undisputed that, when Verizon knew of Plaintiff's concerns regarding her coworkers, it responded to her complaints; (2) Plaintiff's claims under federal and state disability law fail because she is not disabled; and (3) Plaintiff's claims of retaliation fail because the only protected activity in which she allegedly engaged—requesting an accommodation—undisputedly occurred after her termination, precluding any possible inference that the request caused the termination. Accordingly, this Court should grant Verizon's motion.

**A.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S SEX AND RACE DISCRIMINATION CLAIMS**

Under Title VII, Plaintiff cannot defeat summary judgment simply by describing all of the allegedly uncomfortable situations that were created by her coworkers. (<u>See</u> Pl.'s Opp. Br. at

5-13.) Even taking Plaintiff's allegations regarding the conduct of her coworkers[1] as true, the only way Plaintiff can defeat summary judgment on her claims for sex and race discrimination is if she can show genuinely disputed issues of material fact regarding (i) whether Verizon knew or should have known about her coworkers' sexual or racial harassment of her, and (ii) whether it failed to take prompt action to stop that harassment. Noviello v. City of Boston, 398 F.3d 76, 95 (1st Cir. 2005); Crowley v. L.L. Bean, Inc., 303 F.3d 387, 401 (1st Cir. 2002). Because this case deals with alleged coworker harassment, Plaintiff's actual complaints[2] are of central importance and can be broken into three distinct categories: (1) complaints about sex- or race-related comments or conduct by her coworkers to which Verizon responded; (2) complaints regarding rude or insensitive comments or conduct by her coworkers to which Verizon responded; and (3) complaints regarding conduct by coworkers to which Verizon did not respond.

> **1.    *Verizon Responded Promptly and Effectively to Plaintiff's Complaints Regarding Sex- or Race-Based Conduct***

First, the undisputed facts reveal that Plaintiff made two specific complaints claiming racial and/or sexual comments by her coworkers while she was employed, and that Verizon responded to those complaints, as follows:

---

[1] Plaintiff does not dispute in her brief that the conduct of her supervisor, Jack Lynch, does not rise to the level of "severe and pervasive" conduct. In fact, Plaintiff has apparently abandoned any suggestion that Lynch engaged in any actionable conduct. Accordingly, liability under College-Town, Div. of Interco. Inc. v. MCAD, 400 Mass. 156, 162-69 (1987) is not applicable here. Thus, Verizon is liable, if at all, only for the remaining allegations that involve severe and pervasive conduct of coworkers, if it knew or should have known about the conduct.

[2] To the extent Plaintiff alleges that she made "repeated" (Pl.'s SOF ¶ 44) complaints about her workplace—other than the ones set forth and described in Subsections A.1. through A.3.—the Court should disregard those allegations as conclusory, vague and unsupported assertions.

(1) Plaintiff complained for the first time about alleged racist or sexist comments by OTs on August 6, 2002. (Pl.'s SOF ¶ 52.) In that meeting, she only identified one OT by name, and made otherwise general allegations about comments from the group of OTs without identifying a particular person. (Pl.'s SOF, ¶ 52; Heisler Aff., Exhibits 8 and 9.) Notwithstanding this lack of specificity, in response, Verizon ordered OTs to stay out of the Holyoke CO. (Pl.'s SOF ¶ 54-57.) Plaintiff admitted at her deposition that there was an "improvement" afterwards.[3]

(2) Plaintiff's next complaint of allegedly racist or sexist conduct, on September 10, 2002, solely concerned Pula. (Pl.'s SOF ¶ 58.) Specifically, Plaintiff complained about the hair-cutting incident and Pula stepping on her shoes.[4] (Heisler Aff, Exhibit 12.) In response to the complaints Plaintiff raised about Pula, Verizon issued Pula a written warning. (Pl.'s SOF ¶¶ 58, 85.) Plaintiff never returned to work after this meeting (Defs.' SOF ¶ 23; Pl.'s Response to Defs.' SOF, ¶ 23), and thus there could be no evidentiary basis for a conclusion that the remedy imposed by Verizon was not effective.

The court should reject Plaintiff's attempt to create an issue of fact regarding Verizon's liability as to these complaints. In her brief, Plaintiff has ignored the *substance* of the complaints

---

[3] Plaintiff testified as follows:

> Q: In your view, did the behavior of the outside technicians that you have complained about and described . . . ever improve?
> A: They visited the office less frequently.
> Q: That was an improvement in your mind?
> A: That was a blessing, yes.

(Hall Dep. at 181-82). In addition, Lynch testified that Plaintiff told him that things were better after the August 2002 meeting: "[E]very time I went into Holyoke, I always asked, 'Are things better? Are they going okay?' And they always were. And that was the response I got. That made me feel good. Well, whatever we asked them to do outside, it appeared to be working because things were better." (Lynch Dep. 81).

[4] We assume, only for purposes of this motion, that this conduct constitutes sex-based conduct, as Plaintiff has alleged.

she made at the August 6, 2002 and September 10, 2002 meetings, in both of which she raised for the first time issues regarding race- or sex-based comments. Instead, Plaintiff has simply asserted her dissatisfaction and disagreement with Verizon's response to the complaints. However, Plaintiff cannot create a disputed issue of fact based on her personal dissatisfaction with Verizon's response. In fact, as this Court has noted, "[t]he chief measure of adequacy of an employer's response is not the victim's own personal sense of justice." Cerqueira v. Corning Net Optix, No. 03-10306-DPW, 2004 U.S. Dist. LEXIS 17308 at *20 (D. Mass. August 13, 2004). Plaintiff's reliance on the First Circuit decisions in Noviello v. City of Boston, 398 F.3d 76, 97 (1st Cir. 2005) and Crowley v. L.L. Bean, Inc., 303 F.3d 387 (1st Cir. 2002), to support her argument that Verizon's responses to her complaints were inadequate is misplaced. Both Noviello and Crowley concern situations where the Plaintiff repeatedly complained about the *same behavior* and in each case, the employer took no effective action. Here, the undisputed facts reveal that Verizon promptly and effectively responded to each of Plaintiff's two complaints regarding sex- and race-based conduct of her coworkers.

      2.     *Verizon Took Prompt and Effective Action In Response to Plaintiff's Complaints Concerning Conduct Not Related to Sex or Race*

Second, the undisputed facts reveal that Plaintiff made some complaints about her coworkers that were not race- or sex-related, and Verizon responded to those complaints, as follows:

(1) Plaintiff's brief sets forth her allegations regarding the OTs use of the women's bathroom at the Holyoke CO. (Pl. Br. at 8-9; Pl.'s SOF ¶ 22.) In her deposition, Plaintiff

testified that she complained about the bathroom soon after she started in Holyoke in February 2000, and that the lock on the door was replaced within six months.[5] (Hall Dep. 209-210.)

(2) Plaintiff complained to her manager about Brian King in 2001. (Pl.'s SOF ¶ 25.) Verizon instructed King to apologize, which he did. (Pl.'s SOF ¶ 49.)

(3) Plaintiff complained that OTs would leave her work space in disarray when they visited the Holyoke CO, leaving dirt from their muddy shoes on her desk, using her phone and dirtying the surroundings.[6] (Pl.'s Br. 8-9; Pl.'s SOF ¶ 21-24.) Verizon requested that the OTs managers "control their people" and keep them out of the CO. (Pl.'s SOF ¶ 50.)

These complaints have nothing to do with sex or race and, therefore, they cannot form the basis of a Title VII or state law claim for sex or race discrimination. See Judge v. City of Lowell, 160 F.3d 67, 78 (1st Cir. 1998) (rude and insensitive comments and actions are not per se discrimination because the receiver of this crude behavior is a member of a minority group.) Plaintiff cannot create a triable issue on her discrimination claims based on conduct that may be distasteful to her, but which is not based on her sex or race. If Plaintiff's burden were this low, every employer would be liable under Title VII for allegedly rude or insensitive comments or conduct in the workplace. Title VII is not "a general civility code for the American workplace [and] does not reach genuine but innocuous differences in the ways men and women routinely interact with members of the same, and the opposite, sex." Oncale v. Sundowner Offshore

---

[5] Allegations regarding the OTs use of the women's restroom, according to Plaintiff's deposition, occurred in 2000 after she began work in the facility. As such, this conduct occurred outside of the statutory limitations period and is time-barred. (See Defs.' Memo of Law in Support of Summary Judgment, at page 7, note 4.)

[6] Plaintiff's assertion that this conduct, because it was not directed at her white male coworkers in the Holyoke CO, is evidence of race or sex discrimination has no basis in the record, since Plaintiff herself testified that the desks of her coworkers were in a locked cage in the building, to which the OTs did not have access. (Hall Dep. 18; Lynch Dep. 43-44.)

Servs., 523 U.S. 75, 81 (1998). Moreover, notwithstanding the fact that these complaints are not sex- or race-based, the undisputed facts reveal that Verizon still responded to them when they were made: it changed the lock on the bathroom door, it forced a rude employee to apologize, and it requested disorderly OTs to control themselves. Accordingly, Plaintiff cannot sustain her Title VII or state law claims for race or sex discrimination on the basis of these issues.

> 3.   *Plaintiff's Remaining Complaints Do Not Create a Triable Issue Because They Do Not Rise to the Level of Severe or Pervasive Conduct Constituting Actionable Sexual Harassment*

Finally, even taking Plaintiff's allegations as true, the only conduct that Plaintiff complained about that was not promptly and effectively addressed by Verizon was the alleged complaint in the August 6, 2002 meeting regarding Pula's conduct toward her.[7] Specifically, Plaintiff complained that Pula (1) stepped on her shoes on two occasions; and (2) commented when she wore clothing with an ADIDAS label that ADIDAS stood for "all day I dream about sex." (Pl.'s SOF ¶ 53.) The Court should reject Plaintiff's attempt to use these incidents to defeat summary judgment. As a matter of law, they are not "severe or pervasive" enough to constitute actionable harassment. See Oncale, 523 U.S. at 81 (describing severe and pervasive standard); Pastula v. Lane Constr. Corp., No. 05-133-B-W, 2006 U.S. Dist. LEXIS 74199 (D. Me. Oct. 11, 2006) (granting summary judgment on sexual harassment claim based, in part, on lack of evidence of severe or pervasive conduct and noting that the "steady diet" of remarks that the plaintiff endured "were at most 'mere offensive utterances' that cannot fairly be

---

[7] Verizon takes as true Plaintiff's allegation in her summary judgment opposition that she complained in August 2002 about certain conduct by Skip Pula. In fact, however, the parties dispute whether Plaintiff registered such complaints in August 2002, because two different individuals' written summaries of Plaintiff's complaints in that meeting contain no reference to Pula; instead, the written summaries confirm that Plaintiff reported complaints regarding only the outside technicians. (See Pl.'s SOF ¶ 52; Exhibits 8 and 9 to Heisler Affidavit.)

characterized as abusive, intimidating or even humiliating, from an objective standpoint). Plaintiff herself, from the subjective perspective, simply characterized Pula's ADIDAS comment in her deposition as "stupid" and "inappropriate." (Hall Dep. 202-205.) On this factual record, no reasonable fact finder could conclude that Plaintiff suffered actionable harassment as a result of the conduct by Pula, about which Plaintiff allegedly complained in August 2002.

B.   **DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON ALL ASPECTS OF PLAINTIFF'S DISABILITY CLAIMS**

   *1.   As a Matter Of Law, Plaintiff Was Not Disabled Under Federal or State Law.*

Plaintiff seeks to avoid the force of Verizon's argument that she was not substantially limited in a major life activity, and thus not protected by the ADA, by submitting an affidavit that purports to detail the symptoms of her depression.[8] (Pl.'s Aff. ¶¶ 15-16). In addition, Plaintiff suggests that the "major life activities" substantially limited by this depression are sleeping and eating.[9] (Pl.'s Opp. Br. at 33-36.) Plaintiff has provided no evidence, however, that she suffered substantial limitations on her ability to sleep or eat. Rather, her affidavit asserts that she experienced bouts of sleeplessness and had fluctuations in her eating patterns; she does not pinpoint when or for how long these symptoms persisted or how her conditions compared to

---

[8] As an initial matter, Plaintiff is not permitted to create an issue of fact on her disability claim simply by submitting an affidavit that is inconsistent with her earlier deposition testimony. Morales v. A.C. Orssleff's EFTF, 246 F.3d 32, 35 (1st Cir. 2001) (holding that the disparities between the plaintiff's deposition and affidavit "[did] not create a jury question."). To the extent that Plaintiff's affidavit contradicts her deposition testimony regarding the extent and effect of her depression, this Court should disregard it.

[9] Plaintiff apparently is not claiming that she was substantially limited in the major life activity of working. Even if that were her allegation, the record would not support such an assertion. Despite Plaintiff's symptoms, her physicians authorized her to return to work, albeit in a different environment. (Pl.'s SOF ¶ 130). Under those circumstances, she would not be substantially limited from "working" under the ADA. See Lebron-Torres v. Whitehall Labs., 251 F.3d 236, 240 (1st Cir. 2001) ("[P]roof that an individual cannot 'perform a single, particular job does not constitute [proof of] a substantial limitation in the major life activity of working.'")

those in the general population. See Hernandez v. Smith Kline Beecham Pharm., No. 02-2750 (DRD), 2005 U.S. Dist. LEXIS 27995 (D.P.R. Oct.31, 2005) (granting summary judgment on ADA claim and noting that "the record simply shows that plaintiff has some difficulty in sleeping, and that she must take medications to sleep" and noting that the record was "devoid of any evidence indicating how her sleep was limited nor whether her average sleeping hours were less than the average sleeping hours for the average person"). Moreover, the undisputed facts in this case reflect that Plaintiff was out of work from September 2002 until May 2003, and the reason Plaintiff did not return to work was the work location offered to her; she has never asserted that her inability to sleep or eat prevented her from returning to work at any point in 2003 or extended beyond her leave of absence from work. Accordingly, her alleged substantial difficulties sleeping and eating lasted, at best, 6-8 months, which is hardly the kind of prolonged limitation that is required under the ADA. The First Circuit has made clear that a "substantial limitation" must be "permanent or long-term." Bailey v. Georgia-Pacific Corp., 306 F.3d 1162, 1167 (1st Cir. 2002).

Moreover, the undisputed facts reveal that the source of Plaintiff's depression was the thought of further interaction with her coworkers and supervisor at Verizon. Under similar facts, courts have held—as a matter of law—that a plaintiff is not "disabled" under the ADA if the mental impairment at issue, such as depression, is induced by a specific work situation. See Mescall v. Marra, 49 F. Supp. 2d 365, 373 (S.D.N.Y. 1999). In Mescall, similar to the facts here, by the plaintiff's own admission, her mental impairment was caused or exacerbated by her interaction with her supervisor, resulting in a recommendation from her doctor that she not return to work at the same location. Id. In that case, the court held that the plaintiff's inability to work in the same position under the supervision of the same person does not constitute a disability

within the meaning of the ADA.  Id.  See also Stroman v. Blue Cross and Blue Shield Ass'n, 966 F. Supp. 9, 11 (D.D.C. 1997), aff'd, 159 F.3d 637 (D.C. Cir. 1998) (inability to work for a particular supervisor does not qualify as disability).

Finally, it is well-established that a plaintiff's affidavit cannot, on its own, without any medical evidence regarding the alleged limitations on major life activities, prevent summary judgment.  See, e.g., Machin-Rodriguez v. C&C Partnership Coca-Cola P.R., 2005 U.S. Dist. LEXIS 42937 (D.P.R. 2005).  Indeed, Plaintiff's affidavit contradicts her deposition testimony that she was able to participate in "basic activities of daily living" (see Pl.'s Opp. Br. at 32) by taking care of her son, taking care of her grandmother, attending church functions, and participating on the board of a non-profit organization.  In light of these prior admissions, and without any supporting medical evidence, the Plaintiff's allegations about her sleeplessness and variation in appetite are merely conclusory assertions that could not form the basis of a reasonable fact finder's conclusion that she actually suffered substantial limitations of her ability to sleep or eat on a permanent or long-term basis.[10]

### 2. *Plaintiff's Refusal to Accept a Transfer To Another Facility Precludes Her Claim against Verizon for Failure to Accommodate Her Alleged Disability*

Even if this Court were to conclude that Plaintiff is disabled under the ADA and state law, her claim against Verizon for failure to accommodate her disability must fail because no reasonable jury could conclude that Plaintiff requested an accommodation from Verizon prior to

---

[10] Because the analysis of Plaintiff's ADA claims is the same as the analysis is of her claims for disability discrimination under G.L. c. 151B, the counts alleging disability discrimination under 151B should also be dismissed.  See Russell v. Cooley Dickinson Hosp., Inc., 437 Mass. 443, 452 (2002).

her termination from employment.[11]  The sequence of events relating to Plaintiff's accommodation request are undisputed: First, the nurse case manager assigned to Plaintiff's case informed Plaintiff that the last date she was certified for disability benefits was January 12, 2003 and that she was cleared to return to work on January 13, 2003.  (Pl.'s SOF ¶ 94.)  Plaintiff disagreed with this assessment, and, she appealed the denial of her disability benefits claim.  (Pl.'s SOF ¶ 94.)  In April 2003, Verizon first suggested that Plaintiff could be transferred to its Worthington Street facility.  (Heisler Aff. Exhibit 26.)  Plaintiff did not suggest an alternate position in response to that offer.  (Hall Dep. 228, 238.)  To be exact, the first time Plaintiff suggested that there was a potential position for her other than the one offered to her by Verizon on April 10, 2003 was in her deposition in this lawsuit on December 2, 2005.  (Hall Dep. 218, 255-56.)  Under the applicable standard, then, because she did not make a request for accommodation and because she refused Verizon's offer of a reasonable accommodation, Plaintiff's claim for failure to accommodate must fail.  See Phelps v. Optima Health Care, Inc., 251 F.3d 21, 28 (1st Cir. 2001).

Plaintiff nonetheless asserts that Verizon illegally failed to accommodate her when it (1) did not offer her an indefinite unpaid leave of absence, or (2) did not transfer her to an unspecified position in Western Massachusetts where she could do the same job but have no

---

[11] In her brief, Plaintiff appears to rely on the letters from various medical providers in late 2002 and early 2003 indicating that Plaintiff could return to work immediately "in a new position" as evidence that she requested an accommodation.  However, none of these letters constitute requests for an accommodation because: (1) they were not from the Plaintiff nor did she request that her managers consider them; (2) they were written in support of her claim for disability benefits; (3) they primarily focused on detailing Plaintiff's symptoms and the nature of her condition, rather than suggesting a means by which she could return to work.  Plaintiff herself never contacted Verizon to ask when she could return to work or whether she could have a new position prior to Verizon's proposal that she do so in April 2003, or prior to its ultimate *demand* in May 2003 that she return to work in a new position or be terminated from her position.

contact with anyone for whom she previously worked. (Pl.'s Opp. Br. at 41.) The law is clear, however, that indefinite leaves of absence are not reasonable accommodations under the ADA. See Garcia-Ayala v. Lederle Parenterals, Inc., 212 F.3d 638, 648 (1st Cir. 2000); Gantt v. Wilson Sporting Goods Co., 143 F.3d 1042, 1047 (6th Cir. 1998); Hudson v. MCI Telecomms. Corp., 87 F.3d 1167, 1169 (10th Cir. 1996). As to her suggestion that she be transferred to a different position, it is undisputed that Plaintiff never made a request for any position in response to Verizon's offer to work at Worthington Street. (Hall Dep. 228, 238.) In light of this undisputed record, Plaintiff's claim for failure to accommodate cannot succeed, and summary judgment should enter.

**C.     VERIZON IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S RETALIATION CLAIMS**

Plaintiff apparently concedes that her retaliation claims founded upon her alleged protected activity in complaining about sex and race discrimination under Title VII and Chapter 151B (Counts Two and Four) cannot survive. Instead, Plaintiff emphasizes that the "protected activity" in which she engaged was the request for an accommodation of her alleged disability. (Pl.'s Opp. Br. at 52-55.) This claim of retaliation under the ADA fails, however, because the alleged request for accommodation—the only ADA-related protected activity in which Plaintiff allegedly engaged—undisputedly occurred after she had been terminated. Accordingly, this Court should grant summary judgment on Plaintiff's retaliation claim. Guzman-Rosario v. UPS, 397 F.3d 6, 11 (1st Cir. 2005).

For all the foregoing reasons, Verizon respectfully requests that this Court grant summary judgment and dismiss Plaintiff's Complaint in its entirety.

Respectfully submitted,

DEFENDANTS, VERIZON
COMMUNICATIONS, INC. AND
VERIZON NEW ENGLAND, INC.


  /s/ Stacy Smith Walsh
 Victoria Woodin Chavey (*pro hac vice*)
 Stacy Smith Walsh (BBO No. 647420)
 Day, Berry & Howard LLP
 CityPlace I
 Hartford, Connecticut 06103-3499
 (860) 275-0100
 (860) 275-0343 (fax)
 vwchavey@dbh.com
 sswalsh@dbh.com
 Their Attorneys


**CERTIFICATE OF SERVICE**

I hereby certify that on November 17, 2006, a copy of foregoing **Defendants' Reply To Plaintiff's Opposition to Defendant's Motion for Summary Judgment** was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

  /s/ Stacy Smith Walsh
    Stacy Smith Walsh