UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                    )
RHONDA HALL,                        )   CIVIL ACTION NO. 05-30002-MAP
        Plaintiff                   )
                                    )
v.                                  )
                                    )
VERIZON COMMUNICATIONS, INC.,       )
and VERIZON NEW ENGLAND, INC.       )
        Defendants                  )   APRIL 2, 2007
_____)

## JOINT PRETRIAL MEMORANDUM

Pursuant to Local Rule 16.5 and the Court's January 26, 2007 Order, the parties hereby submit the following Joint Pretrial Memorandum.

**1.      Summary of the Evidence to be Presented**

   A.   Plaintiff's Concise Summary of the Evidence

Ms. Hall brings this action for equitable relief and compensatory and punitive damages against defendants Verizon Communications, Inc. and Verizon New England, Inc. (hereafter collectively referred to as "Verizon") under Title VII of the Civil Rights Act, the Americans with Disabilities Act and the Massachusetts laws against discrimination for persistent and continuous acts of discrimination and retaliation against her on the basis of her race, color, gender and disability.

During the course of her employment for Verizon in its Holyoke, MA Central Office facility, Ms. Hall was subjected to discriminatory actions and omissions by the defendant which included the following: a) Ms. Hall was subjected to a hostile work environment which included threatening, offensive, demeaning and assaultive treatment and comments directed at her in whole or in part because she is an African American woman; b) Ms. Hall's efforts to complain to Verizon supervisors and managers about hostile and harassing treatment and comments were trivialized, dismissed or ignored and these supervisors and managers failed to respond in any meaningful or effective way to racist and sexist actions of Verizon employees; c) Ms. Hall became disabled as a result of the treatment she received as an employee of Verizon and Verizon failed to reasonably accommodate her disability; and d) Ms. Hall's employment was terminated as a direct consequence of the discriminatory and retaliatory treatment to which she was subjected.

Ms. Hall seeks equitable relief designed to assure that the defendants discontinue policies and practices which serve to foster discrimination against African American, female and disabled employees of Verizon. She also seeks compensation for the grave harm she has suffered and continues to suffer as a result of the discriminatory actions and omissions of the defendants. By

way of damages, Ms. Hall will present evidence to show that she is entitled to an award of lost back wages, lost employee benefits, and lost future wages and front pay. The evidence will further show that Ms. Hall suffered emotional distress, mental anguish and physical pain and suffering as a direct result of the defendant's discriminatory actions. Lastly, the evidence will show that the discriminatory and retaliatory actions of Verizon resulted from malice or reckless indifference to Ms. Hall's rights under applicable state and federal anti-discrimination laws, and that she is entitled to an award of punitive damages.

      B.      <u>Defendant's Concise Summary of the Evidence</u>

The evidence will show that Verizon is not liable to Plaintiff for any of her causes of action. The evidence will show that, as soon as Plaintiff complained about any incidents that she interpreted as insensitive on the basis of gender or race, it took prompt action and took reasonable steps to ensure that the incidents did not happen again. Specifically, the evidence will show that Plaintiff complained about some of her coworkers only after they raised concerns with the Union about her on-the-job performance. The evidence will also show that despite the timing of her complaints, her managers addressed her concerns and took action. The evidence will show that Plaintiff first complained about her on-site coworker, Skip Pula, after he inadvertently cut her hair but not on any occasion prior to that. Verizon undertook an investigation of the hair-cutting incident, as well as all of the complaints raised by Plaintiff, in September and October 2002, and took action as a result of the investigation.

As to her claims that Verizon failed to accommodate her disability, the evidence will show that Plaintiff is not now and was not ever disabled as that term is defined by federal or state law. The evidence will further show that, despite the fact that it had no obligation to do so, it offered Ms. Hall a transfer to a different position, with different managers and co-workers, in an effort to permit her to return to work. Ms. Hall unreasonably refused that offer to return to work, despite the fact that her own health care providers cleared her to return to work in a different work environment. In fact, it was only after several warnings that a failure to return to work would lead to termination, and after Plaintiff unequivocally refused the offer of a new position yet did not suggest any alternatives, that Verizon terminated Plaintiff's employment on May 27, 2003.

Finally, with respect to damages, the evidence will show that Plaintiff's damages are limited by her failure to mitigate those damages following her termination from employment. The evidence will also show that the alleged emotional distress that Plaintiff suffered, if any, had ceased by August 2003, only three months after her employment termination.

**2.**    **Undisputed Facts[1]**

    1.      Ms. Hall is an African American woman.

---

[1] Defendant acknowledges that the parties do not dispute the facts that are listed in this section. However, in the event Plaintiff intends to introduce evidence regarding any of these facts during the trial, Defendant objects to reading to the jury those facts as to which any other evidence is offered at any time during the trial of this matter.

2.      Ms. Hall began working for the Defendants in or around March 1989. In or around January 2000, Ms. Hall began working in Verizon's central office facility in Holyoke, Massachusetts (hereafter referred to as the "Holyoke CO") as a Central Office Technician (hereafter referred to as "CO Tech").

3.      Ms. Hall's first level supervisor, or "Turf Team Leader," was Jack Lynch. The second level manager responsible for supervising central office technicians and operations in Western Massachusetts was George Savaria.  Both Mr. Lynch and Mr. Savaria are white males.

4.      Throughout the time that Ms. Hall worked in the Holyoke CO, there were three Verizon employees assigned to work in the building; Ms. Hall and two other CO Techs, Eugene "Skip" Pula and Mike Stawasz, both of whom are white males.

5.      The Holyoke CO is a large structure with four floors, including a basement.  The CO Techs work on the first and third floors.  There are two men's restrooms in the building; one in the basement and one on the third floor. There is one women's restroom which is located on the second floor. There is a fenced in parking lot in the rear of the building.

**3.     Disputed Facts**

A.      Whether Plaintiff experienced a gender-based hostile work environment that Verizon failed to remedy effectively.

B.      Whether Verizon terminated Plaintiff's employment on the basis of her gender.

C.      Whether Plaintiff experienced a race-based hostile work environment that Verizon failed to remedy effectively.

D.      Whether Verizon terminated Plaintiff's employment on the basis of her race.

E.      Whether Plaintiff was "disabled" under the relevant statutes.

F.      Whether Verizon failed to reasonably accommodate Plaintiff's alleged disability.

G.      Whether Verizon terminated Plaintiff's employment on the basis of her alleged disability.

H.      Whether Verizon retaliated against Plaintiff for pursuing her rights under federal or state law to request a reasonable accommodation for her alleged disability.

I.      Whether Verizon had a legitimate, nondiscriminatory reason for terminating the employment of Plaintiff.

J.      Whether the reason(s) proffered by Verizon for terminating Plaintiff's employment were a pretext for discrimination and/or retaliation.

K.      Whether Plaintiff has suffered any lost wages or employee benefits or emotional distress as the result of any actions and/or omissions of Verizon.

      L.      Whether Plaintiff reasonably mitigated her damages.

      M.      Whether the actions and omissions of Verizon resulted from malice or reckless indifference to Plaintiff's rights under applicable state and federal anti-discrimination laws.

**4.      Jurisdictional Questions**

There are no jurisdictional issues.

**5.      Pending Motions**

There are no pending motions.

**6.      Issues of Law**

The Defendants anticipate that the following legal issues may arise prior to or during the trial of this matter: (1) questions regarding the admissibility of expert testimony; (2) whether all of plaintiff's claims for back pay and front pay under Title VII and the ADA are equitable in nature and are triable to the court (42 U.S.C. § 12117(a); 42 U.S.C. § 2000e-5(g)(1)); and (3) whether Plaintiff's counsel should be disqualified because he is likely to be a fact witness concerning the interactions between plaintiff and the company regarding Plaintiff's accommodation and potential return to work in 2003.

**7.      Requested Amendments to the Pleadings**

There are no requested amendments to the pleadings.

**8.      Additional Matters**

Potential Motions in Limine are to be filed one week before the commencement of trial.

Due to the nature of potential damages in the action being dependent on the counts of Plaintiff's Complaint as to which the jury finds liability, and due to the fact that several issues regarding damages are triable to the Court and not the jury, Defendant believes this case would be most efficiently tried if it were bifurcated as to liability and damages.

**9.      Probable Length of Trial – Jury**

Assuming trial days of 9:00 a.m. to 1:00 p.m., the parties anticipate that the case will take 12-15 days.

**10.     Names and Addresses of Witnesses**

The parties anticipate they may call all or some of the following fact witnesses listed below, and each party reserves the right to call any of the witnesses listed by any other party. The parties expressly reserve the right to supplement their lists as evidence and testimony are introduced at trial, or for good cause shown. The parties further reserve the right to amend their

witness lists and call additional witnesses, if necessary, to rebut testimony offered by any other party's witnesses.

No expert witnesses were disclosed pursuant to Fed. R. Civ. P. 26(a) by either party in discovery in this matter.

**A.    Plaintiff's Proposed Fact Witnesses are:**

Rhonda Hall
c/o Heisler, Feldman, McCormick & Garrow, P.C.
1145 Main Street, Suite 508
Springfield, MA 01103
(413) 788-7988

Judd L. Peskin, Esq.
Peskin, Courchesne & Allen, P.C.
101 State Street, Suite 301
Springfield, MA 01103

Greg Drew
819 Sumner Avenue
Springfield, MA

| | |
|---|---|
| Kathy Collins | John Lynch |
| Paul McGovern | George Savaria |
| Thomas Hurley | Peter Magmer |
| Joe Osediacc | Karen James Sykes |
| Mike Stawasz | Christopher Winslow |

The following health care professionals may be called upon by Plaintiff to testify regarding the harm suffered by Ms. Hall due to the defendants' discriminatory and retaliatory actions and omissions, the nature and severity of the disabling mental health conditions from which she suffered as a result of the Defendants' wrongful actions and omissions, the extent of the limitations which these disabling mental health conditions imposed on her daily life activities, and her need for accommodations in the workplace from the Defendants:

David Honeyman, M.D.
RiverBend Medical Group
232 Main Street
Agawam, MA 01001-1838

Linda C. Robinson, LICSW
RiverBend Medical Group
232 Main Street
Agawam, MA 01001-1838

      Richard F. Kaplan, Ph.D., ABPP/CN
      Director of Clinical Neuropsychology
      University of Connecticut Health Center
      263 Farmington Avenue
      Farmington, CT 06030-2103

      Kenneth Jaffe, M.D.
      575 Beech Street
      Holyoke, MA  01040

B.    Defendant's Proposed Fact Witnesses are:

| Name | Title/Company | Address |
| --- | --- | --- |
| Louis Brunetti | Former President, IBEW Local 2324 | 281 Cottage Street Springfield, MA |
| Ray Cichy | Outside Technician, Verizon | to be provided |
| Katherine Collins | Union Steward, IBEW Local 2324 | 281 Cottage Street Springfield, MA |
| Elizabeth Corse | Splice-Service Technician, Verizon | 323 Lockhouse Drive Westfield, MA |
| Joyce Eldridge | Central Office Technician, Verizon | 322 Maple Street Holyoke, MA |
| Paul Labonte | Director, Network Operations, New England, Verizon | 900 Chelmsford Street Lowell, MA |
| John Lynch | Supervisor/Network Operations, Verizon (retired) | 2A Gables Drive Laconia, NH |
| Paul McGovern | EEO Management Consultant, Verizon | 125 High Street Boston, MA |
| Eugene Pula | Central Office Technician, Verizon | 322 Maple Street Holyoke, MA |
| George Savaria | Manager Network Operations, Verizon (retired) | 367 Ely Avenue West Springfield, MA |
| Michael Stawasz | Central Office Technician, Verizon (retired) | 559 Birnie Avenue West Springfield, MA |

**11. Proposed Exhibits**

The parties expressly reserve the right to amend these exhibit lists up to the time of trial. The parties further reserve the right to use charts or enlargements during the course of trial as needed. In addition, the parties expressly reserve the right to offer exhibits not listed below for rebuttal and impeachment at the time of trial.

**A.    Exhibits to Be Introduced Without Objection:**

1. Notes taken by George Savaria at a meeting on August 6, 2002.
2. Notes taken by Jack Lynch at a meeting on August 6, 2002.
3. An e-mail message from Paul McGovern to Thomas Hurley dated October 10, 2002.
4. An e-mail response from Thomas Hurley to Paul McGovern dated October 11, 2002.
5. Notes taken by George Savaria at a meeting on September 10, 2002.
6. An e-mail message from Paul McGovern to George Savaria dated September 9, 2002.
7. Type-written notes of interviews conducted by Paul McGovern.
8. Hand-written notes of interviews conducted by Paul McGovern.
9. An Executive Summary of the investigation conducted by Paul McGovern dated October 10, 2002.
10. A warning letter issued to Skip Pula dated October 22, 2002.
11. Notes taken by Paul McGovern of a phone conversation with Rhonda Hall dated October 25, 2002.
12. A facsimile sent on 12/30/02 from Dr. Richard Kaplan to Kaitlin McNally.
13. A letter from Paul R. Labonte to Rhonda Hall dated May 27, 2003.
14. A letter from Jack Lynch to Rhonda Hall dated May 20, 2003.
15. A letter from Paul McGovern to Hugh Heisler dated May 1, 2003.
16. A letter from Paul McGovern to Hugh Heisler dated May 9, 2003.
17. A letter from Paul McGovern to Hugh Heisler dated May 22, 2003.
18. Rhonda Hall's copy of the collective bargaining Agreement between Verizon and the IBEW effective August 6, 2000.
19. Rhonda Hall's copy of the collective bargaining Agreement between Verizon and the IBEW effective August 3, 2003.
20. Sample Overtime/Call-out Lists for the South Area.
21. Connecting With Each Other – Verizon Code of Business Conduct (pp. 12-13)
22. Correspondence between Verizon and IBEW regarding force surplus dated April 7, 2003

**B.     Exhibits to Which the Parties Reserve the Right to Object:**

1. A summary prepared by Ms. Hall which she sent by facsimile to Karen James-Sykes, and which Ms. James-Sykes in turn sent by facsimile dated 10/2/02 to Paul McGovern.
2. The Defendants' Answers and Supplemental Answers to the Interrogatories propounded by the Plaintiff.
3. A report issued by Dr. Richard F. Kaplan reflecting the results of an IME conducted on December 6, 2002.
4. A Psychiatric Assessment from Dr. David L. Honeyman dated September 27, 2002.
5. A Psychiatric Assessment from Dr. David L. Honeyman dated October 29, 2002.
6. A Psychiatric Assessment from Dr. David L. Honeyman dated January 3, 2003.
7. A letter from Dr. David L. Honeyman to Attorney Judd Peskin dated February 11, 2003.
8. A letter from Paul McGovern to Hugh Heisler dated April 10, 2003.
9. A letter from Hugh Heisler to Paul McGovern dated April 18, 2003.
10. A report issued by Dr. Kenneth Jaffe on October 2, 2003 reflecting the results of an examination of Ms. Hall.
11. A letter from Dr. David Honeyman to Attorney Judd Peskin dated May 13, 2003.
12. A letter from Hugh Heisler to Paul McGovern dated May 16, 2003.
13. A letter from Rhonda Hall to Jack Lynch dated May 23, 2003.
14. A letter from Hugh Heisler to Paul McGovern dated May 30, 2003 which has been redacted to exclude references to settlement discussions regarding Ms. Hall's claims in this matter.
15. Relevant portions of Tax Returns filed by Rhonda Hall, including W-2 Forms, for the years 2001 through 2006.
16. Photograph of the inside of a Cross Box located at 410 Carew Street in Springfield, MA.
17. Hand-written notes of Rhonda Hall recorded following the hair-cutting incident on September 5, 2002.
18. FMLA Certification Form completed by Rhonda Hall and Linda C. Robinson, LICSW dated September 13, 2002.
19. Progress Notes of David Honeyman, M.D. dated September 13, 2002, September 27, 2002, October 25, 2002 and November 5, 2002.
20. Progress Notes of Linda Robinson, LICSW dated September 13, 2002.
21. A letter To Whom It May Concern from Linda Robinson, LICSW dated September 13, 2002.
22. A disability form completed by Linda Robinson, LICSW dated September 19, 2002.
23. A facsimile from Attorney Judd L. Peskin to Attorney Mathew King dated May 20, 2003.
24. A letter from Attorney Judd L. Peskin to Attorney Mathew King dated May 30, 2003 which has been redacted to exclude references to settlement discussions.
25. Relevant portions of Rhonda Hall's personnel file maintained by Verizon.

Respectfully submitted,

| | |
|---|---|
| **RHONDA HALL,** | **DEFENDANTS, VERIZON COMMUNICATIONS, INC. AND VERIZON NEW ENGLAND, INC.** |
| /s/ Hugh D. Heisler | /s/ Stacy Smith Walsh |
| Hugh D. Heisler<br>Heisler, Feldman, McCormick & Garrow, P.C.<br>1145 Main Street, Suite 508<br>Springfield, MA 01103<br>Phone: (413) 788-7988 x1<br>Fax: (413) 788-7996<br>Hughdh@comcast.net<br><br>Her Attorney | Victoria Woodin Chavey (*pro hac vice*)<br>Stacy Smith Walsh (BBO No. 647420)<br>Day Pitney LLP<br>CityPlace I<br>Hartford, Connecticut 06103-3499<br>(860) 275-0100<br>(860) 275-0343 (fax)<br>vwchavey@daypitney.com<br>sswalsh@daypitney.com<br><br>Their Attorneys |

## CERTIFICATE OF SERVICE

I hereby certify that on April 2, 2007, a copy of foregoing **Joint Pretrial Memorandum** was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                         By /s/ Stacy Smith Walsh
                                            Stacy Smith Walsh (BBO#647420)
                                            Day Pitney LLP
                                            CityPlace I
                                            Hartford, CT  06103-3499
                                            (860) 275-0100
                                            Fax:  (860) 275-0343
                                            sswalsh@daypitney.com