UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RHONDA HALL, | CIVIL ACTION NO. 05-30002-MAP |
| Plaintiff, | |
| v. | |
| VERIZON COMMUNICATIONS, INC. and VERIZON NEW ENGLAND, INC. | |
| Defendants. | APRIL 20, 2007 |

### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL, HUGH D. HEISLER

Defendants Verizon Communications, Inc. and Verizon New England, Inc. (collectively, "Verizon") respectfully submit this memorandum of law in support of their motion to disqualify Plaintiff's attorney, Hugh D. Heisler.

**I.     Preliminary Statement**

Verizon makes this motion pursuant to Massachusetts Rule of Professional Conduct 3.7(a) because Attorney Heisler is likely to be a necessary witness at trial. Plaintiff intends to use Attorney Heisler's letters to Verizon as exhibits at trial on the material disputed issue of whether Verizon offered Plaintiff a reasonable accommodation. While there is no dispute that Verizon offered Plaintiff an equivalent position in an alternate location and that Plaintiff rejected Verizon's offer, the parties dispute the validity of Plaintiff's reasons for her rejection.[1] The only contemporaneous evidence regarding Plaintiff's purported reasons for rejecting the transfer offer

---

[1] Verizon files simultaneously a motion in limine to exclude any evidence relating to alleged graffiti on Carew Street in Springfield in 2003. If that motion is granted, and Plaintiff therefore presents no evidence concerning the graffiti or her reaction to it, then Attorney Heisler's letters themselves become irrelevant and should be excluded, thus rendering this motion for disqualification moot.

are the letters from Attorney Heisler to Verizon. Those letters contain, inter alia, strongly worded factual assertions regarding alleged racist and anti-Semitic graffiti that Plaintiff purportedly considered in making her decision to reject the transfer offer. Verizon is entitled to explore the basis of the letters' allegations with the person who made them, and thus Attorney Heisler is likely to be a necessary witness and must be disqualified.

## II.   Factual Background

Plaintiff, a former Central Office Technician ("CO Tech") in Verizon's Holyoke, Massachusetts Central Office ("Holyoke CO"), went out on mental disability leave in September 2002, allegedly as a result of racial and gender-based conduct that she had encountered in the Holyoke CO and that Verizon management had failed to remedy. Her medical care provider cleared her to return to work in January 2003, but in a "different work environment."

In May 2003, Verizon offered to accommodate Plaintiff by transferring her to a CO Tech position in a different environment, its Worthington Street facility in Springfield, Massachusetts. Plaintiff, through letters from her attorney to the Company, rejected Verizon's offer, claiming, among other things, that: (1) if she were to work in Springfield, she would encounter some of her former managers and co-workers from the Holyoke CO; and (2) there had been offensive racist and anti-Semitic graffiti on a Verizon installation on Carew Street in Springfield, and local managers had not promptly responded to employee complaints about it.[2] In rejecting Verizon's offer, Plaintiff did not suggest any alternative work assignment.

---

[2] It appears to be undisputed that Plaintiff never saw the alleged graffiti and that she has no personal knowledge of employee complaints about it or Verizon's response to it. Rather, Plaintiff apparently intends to testify to hearsay about the graffiti—what she was told at the time by certain Verizon employees—not for its truth but for the impact that information had on her. Verizon further understands that Plaintiff also intends to call a witness who will testify to personal knowledge of the graffiti. None of this evidence would be relevant if Verizon's motion to exclude evidence of the Carew Street graffiti is granted. See also footnote 1.

In Attorney Heisler's first of two letters stating Plaintiff's response to the offered transfer to Worthington Street, he states that Plaintiff's "concerns have been dramatically heightened by" the Carew Street graffiti incident.[3] Attorney Heisler goes on in that May 16, 2003 letter to say that "Verizon managers and supervisor took no steps over an extended period of time to remove white supremacist graffiti authored by a Verizon employee which advocated the murder of 'niggers and jews.' This extremely offensive and frightening material remained visible to Verizon employees for approximately one month, despite repeated requests from African American employees to have it removed."

Attorney Heisler sent a second letter to Verizon on May 30, 2003,[4] which asserted a link between Verizon's alleged handling of the graffiti and its anticipated treatment of Ms. Hall at Worthington Street: "[T]he [graffiti] incident highlights the unwillingness of Verizon supervisors and managers working the Springfield offices to respond in any meaningful way to racist and sexist actions of Verizon employees."[5] The letter also described other issues relating to Ms. Hall's rejection of the transfer: her "concern that a transfer into a position which would require her to have regular contact with supervisors, manager and other Verizon employees with whom she previously worked would expose her to an increased risk of retaliatory treatment."

---

[3] This letter, dated May 16, 2003, is attached as Exhibit A.

[4] The May 30, 2003 letter is attached as Exhibit B.

[5] In the interim, Verizon responded on May 22 to Attorney Heisler's May 16, 2003 letter by stating, *inter alia*: "Furthermore, your alleged concerns regarding offensive graffiti are unfounded – the offensive statement at issue was not in the Springfield office, is being investigated, and is no longer present."

### III. Argument

#### A. Rule 3.7(a) of the Massachusetts Rules of Professional Conduct Governs this Issue

Lawyers acting as witnesses are governed by Massachusetts Rule of Professional Conduct 3.7(a), which is specifically incorporated into the Rules of this Court by D. Mass. L.R. 83.6(4)(B). Rule 3.7(a) provides:

> (a) A lawyer shall not act as advocate at trial in which the lawyer is likely to be a necessary witness except where: (1) The testimony related to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; or (3) disqualification of the lawyer would work a substantial hardship on the client.

"The party moving for disqualification of a lawyer under Rule 3.7 has the burden of showing that the lawyer is likely to be a necessary witness by demonstrating that the lawyer's testimony is relevant to disputed, material questions of fact and that there is no other evidence available to provide those facts." Carta v. Lumbermens Mutual Casualty Co., 419 F. Supp. 2d 23, 29 (D. Mass. 2006) (citations and quotation marks omitted). As this court has noted:

> The purposes of the rules are set forth in Comment [1]: Combining the roles of advocate and witness can prejudice the opposing party and can involve a conflict of interest between the lawyer and client. In turn, Comment [2] states that the opposing party has proper objection <u>where the combination of roles may prejudice that party's rights in the litigation</u>. A witness is required to testify on the basis of personal knowledge, Comment [2] continues, while an advocate is expected to explain and comment on evidence given by others. Accordingly, the comment concludes, it may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof.

Laforest v. Ameriquest Mortgage Co., No. 04-30195-MAP, 2006 U.S. Dist. LEXIS 39293, at *11 (D. Mass. June 2, 2006) (emphasis added).

#### B. Attorney Heisler Should Be Disqualified Because He Is Likely To Be A Necessary Witness On Disputed Material Issues.

Here, Attorney Heisler is likely to be a necessary witness on disputed material issues, and none of the exceptions apply. Moreover, the conflict inherent in the witness/advocate role in this

particular instance significantly prejudices Verizon because the absence of Attorney Heisler as a witness would prevent Verizon from cross-examining the author of key documents concerning Plaintiff's reaction to Verizon's offered accommodation, which Plaintiff contends is relevant to the reasonableness of Verizon's offer.[6]

As this Court has noted, "[a] lawyer is likely to be a necessary witness where the proposed testimony is relevant, material, not merely cumulative, and unobtainable elsewhere." Carta, 419 F. Supp. 2d at 29 (citation omitted). Here, Plaintiff claims that her negative reaction to the Carew Street graffiti is relevant to the reasonableness of Verizon's offered accommodation, and that Attorney Heisler's letters put Verizon on notice of her negative reaction. Accordingly, Plaintiff's own position makes Attorney Heisler's testimony about the letters relevant and material.

Accordingly, Verizon should be permitted to explore on cross-examination:

- the source(s) of Attorney Heisler's knowledge of the graffiti (again, it appears to be undisputed that Plaintiff herself had no personal knowledge of the graffiti);

- any investigation that he conducted regarding Verizon's response to the graffiti incident, or any investigation that Plaintiff conducted on her own or at his direction;

- any information that he had regarding who wrote the graffiti;

- his knowledge of the managers and supervisors to whom complaints about the graffiti were allegedly made;

---

[6] See footnotes 1 and 2. Verizon is seeking to exclude evidence of Plaintiff's reaction to the offered accommodation as irrelevant to its reasonableness as a matter of law.

- the basis for his assertion regarding "the unwillingness of Verizon supervisors and managers working in the Springfield offices to respond in any meaningful way to racist and sexist actions of Verizon employees";

- his understanding of the identity of the managers and supervisors to whom Plaintiff would report if she accepted the position at Worthington Street;

- whether he consulted with any of Plaintiff's medical treatment providers as to the effect that the graffiti—which Plaintiff did not see herself—had or would have on Plaintiff; and

- the extent to which Plaintiff informed him that she was concerned about the transfer because of the graffiti (or vice versa).[7]

Without the ability to cross-examine Attorney Heisler on these matters, Verizon cannot adequately explore the basis for the rejection of the transfer.

Attorney Heisler has asserted, however, that the letters about which Verizon would cross-examine him are offered merely as evidence of the undisputed fact that Verizon had *notice* of the objections Plaintiff raised to the transfer. Plaintiff apparently intends to testify herself as to the substance of her objections to the transfer to Worthington Street, and intends to rely on non-party witness Greg Drew to testify from personal knowledge of the graffiti. Plaintiff thus seeks to take advantage of exception (1) to Rule 3.7(a). This argument should be rejected.

Plaintiff's argument is mere bootstrapping. One might imagine Plaintiff taking the stand and describing her concerns about the transfer to Worthington Street.[8] She will then testify that

---

[7] Moreover, if Attorney Heisler's letters are used at trial, Verizon should be permitted to obtain all his records and/or files concerning the matters listed above.

[8] Verizon notes that its Motion in Limine, filed herewith, also addresses the fact that Plaintiff's subjective beliefs about the reasonableness of an accommodation are absolutely irrelevant to a determination of whether Verizon's offer of a transfer was a reasonable accommodation or not.

-6-

she did not communicate those concerns to Verizon herself; rather, her lawyer expressed concerns on her behalf, in his letters to Verizon. If she then testifies that she expressed to her lawyer the very concerns that he noted in his letters, Verizon has no way of testing her assertions by asking Attorney Heisler what Plaintiff told him of her concerns at the time; if, on the other hand, Plaintiff testifies that she did not express to her lawyer the concerns as stated in his letters, Verizon is then deprived of any information about where the information in the letters came from. Under both these scenarios, the genuineness of Plaintiff's concern about how the Carew Street graffiti incident might impact her assignment to Worthington Street and the timing of her expression of that concern are critical issues with regard to whether Verizon's offered accommodation was reasonable.

Courts that have granted motions to disqualify on the basis of Rule 3.7 do so when the lawyer "can testify to facts about which no one else can testify and [has] personal knowledge of matters that will be necessary to prove the plaintiff's claims." Carta, 419 F. Supp. 2d at 30. Here, Attorney Heisler is the only individual who communicated Plaintiff's apparent objections about the transfer to Verizon. His letters, which Plaintiff herself deems critical to her case, inextricably involve him in the factual underpinnings of Plaintiff's claims. Accordingly, he is a necessary witness and must be disqualified.[9]

---

[9] If this Court were to conclude that Attorney Heisler is likely to be a necessary witness, there would be no substantial hardship to Plaintiff as a result of disqualification. Any delay occasioned by disqualification would not be substantial or unduly prejudicial. In fact, this court has granted a motion to disqualify even where "there may be some expense and delay involved in obtaining successor counsel." Carta, 419 F. Supp. 2d at 32. In granting the motion to disqualify, the court in Carta noted that "a lawyer taking over this case would not need any specialized or unique knowledge." Id. Here, knowledge of employment law is not so specialized that a different outcome would be required. Discovery was in its early stages in Carta, but courts are nonetheless willing to grant motions to disqualify at later stages. See Laforest v. Ameriquest Mortgage Co., No. 04-30195-MAP, 2006 U.S. Dist. LEXIS 39293, at *11 (D. Mass. June 2, 2006) (granting motion after substantial discovery had been completed).

Even an assertion by Plaintiff that she does not intend to rely on testimony from Attorney Heisler to support her case does not obviate the Rule 3.7 issue here. The question is "not whether Plaintiff could possible make a case without [her attorney's] testimony, but rather whether *objectively* [the attorney] 'ought' to be called as a witness." Laforest v. Ameriquest Mortgage Co., No. 04-30195-MAP, 2006 U.S. Dist. LEXIS 39293, at *11 (D. Mass. June 2, 2006) (Neiman, J.) (emphasis added) (quoting Borman v. Borman, 378 Mass. 775 (1979)). Accordingly, Attorney Heisler is a necessary witness, and should be disqualified.

**IV.    Conclusion**

For the foregoing reasons, Verizon respectfully requests that the Court disqualify Plaintiff's counsel because—in the absence of a ruling excluding evidence regarding the Carew Street graffiti—he is a necessary witness in this proceeding.

        Respectfully submitted,

        DEFENDANTS, VERIZON
        COMMUNICATIONS, INC. AND
        VERIZON NEW ENGLAND, INC.

          /s/ Stacy Smith Walsh
        Victoria Woodin Chavey (*pro hac vice*)
        Stacy Smith Walsh (BBO No. 647420)
        Day Pitney LLP
        CityPlace I
        Hartford, Connecticut 06103-3499
        (860) 275-0100
        (860) 275-0343 (fax)
        vwchavey@daypitney.com
        sswalsh@daypitney.com
        Their Attorneys

## CERTIFICATE OF SERVICE

      I hereby certify that on April 20, 2007, a copy of foregoing **Defendants' Memorandum of Law in Support of Its Motion to Disqualify Plaintiff's Counsel, Hugh D. Heisler** was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

                                                  /s/ Stacy Smith Walsh
                                                  Stacy Smith Walsh

# EXHIBIT A

# Heisler, Feldman & McCormick, P.C.

Attorneys at Law

Hugh D. Heisler
Joel H. Feldman
Thomas J. McCormick
Suzanne Garrow

May 16, 2003

Paul McGovern
EEO Management Consultant
Verizon
125 High Street, Room 817
Boston, MA 02110

Re:  Rhonda Hall v. Verizon
     MCAD Docket No. 02 SEM 3273

Dear Mr. McGovern:

   I am in receipt of your letter dated May 9, 2003. Please accept this letter as further confirmation that Ms. Hall has not abandoned her employment and she has no intention of abandoning her employment. It continues to be her position that she remains eligible for Sickness Disability Benefits, and she is aggressively pursuing her appeal of the decision discontinuing those benefits.

   We are in the process of evaluating your offer to transfer Ms. Hall to Verizon's Springfield facilities without conditions. Ms. Hall has serious concerns about the prospect of working in an office with the same individuals who supervised her work in Verizon's Holyoke office. These supervisors have already demonstrated an unwillingness or inability to take prompt and appropriate remedial action to eradicate the hostile work environment to which Ms. Hall was subjected in the Holyoke office. The actions and inaction of Jack Lynch in particular directly contributed to this hostile work environment. As a consequence, Ms. Hall has no confidence that these same supervisors would act any differently should there be further occurrences of hostile treatment in Springfield if she were to accept the proposed transfer. Her concerns have been dramatically heightened by recent events in Verizon facilities in Springfield. In particular, Verizon managers and supervisors in Springfield took no steps over an extended period of time to remove white supremacist graffiti authored by a Verizon employee which advocated the murder of "niggers and jews." This extremely offensive and frightening material remained visible to Verizon employees for approximately one month, despite repeated requests from African American employees to have it removed.

Paul McGovern
May 16, 2003
Page 2

    We are awaiting receipt of more recent medical records relating to the transfer of Ms. Hall to the Springfield facilities of Verizon which you have proposed, and I will contact you immediately upon receipt of these additional records.

                                        Very truly yours,

                                        Hugh D. Heisler

cc:    Rhonda Hall
        Maryann Brunton

# EXHIBIT B

# Heisler, Feldman & McCormick, P.C.

Attorneys at Law

Hugh D. Heisler
Joel H. Feldman
Thomas J. McCormick
Suzanne Garrow

BY FACSIMILE AND FIRST CLASS MAIL

May 30, 2003

Paul McGovern
EEO Management Consultant
Verizon
125 High Street, Room 817
Boston, MA 02110

Re:   Rhonda Hall v. Verizon
      MCAD Docket No. 02 SEM 3273

Dear Mr. McGovern:

    I am writing as a follow-up to my letter to you dated May 9, 2003. I am enclosing a copy of a letter dated May 13, 2003 from Dr. David Honeyman, Ms. Hall's psychiatrist, to attorney Judd Peskin. A copy of this letter was previously supplied to attorneys for Verizon by attorney Peskin. In this letter, Dr. Honeyman expresses his belief that Ms. Hall would not be able to manage the level of distress she would likely feel if she were to be transferred into a similar position in Verizon's Springfield office. Dr. Honeyman correctly notes that such a transfer would require that Ms. Hall continue interacting and having contact with managers and supervisors whose actions and inaction contributed to the hostile work environment she experienced in the Holyoke office.

    In your letter to me dated May 22, 2003, you state that Ms. Hall would have little or no interaction with Mr. Lynch if she accepted a transfer to the Springfield office. Ms. Hall does not draw much comfort or reassurance from this statement. In a letter dated May 20, 2003, Ms. Hall received a terse directive to report to work at the Springfield office on May 26, 2003 or risk the termination of her employment. This directive was issued by none other than Jack Lynch in his capacity as "Turf Team Leader." Merely assigning Ms. Hall to a different first level supervisor does not alter the fact that she would have to continue working with the same supervisors and managers who persistently ignored and contributed to hostile working conditions in the Holyoke facility. In my May 16th letter to you, I mentioned the incident involving the vile racist graffiti in the cross box at 410 Carew Street in Springfield not because

Paul McGovern
May 30, 2003
Page 2

Ms. Hall had any concerns that she personally would be exposed to this hateful material. Rather, the incident highlights the unwillingness of Verizon supervisors and managers working in the Springfield offices to respond in any meaningful way to racist and sexist actions of Verizon employees. Ms. Hall is also concerned that a transfer into a position which would require her to have regular contact with supervisors, managers and other Verizon employees with whom she previously worked would expose her to an increased risk of retaliatory treatment.



Paul McGovern
May 30, 2003
Page 3

I look forward to hearing from you.

Very truly yours,

Hugh D. Heisler

cc: Rhonda Hall (w/copy)
    Maryann Brunton (w/copy)