UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| | ) | |
| RHONDA HALL, | ) | CIVIL ACTION NO. 05-30002-MAP |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| VERIZON COMMUNICATIONS, INC. and | ) | |
| VERIZON NEW ENGLAND, INC. | ) | |
| | ) | |
| Defendants. | ) | APRIL 20, 2007 |
| | ) | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE EVIDENCE OF CAREW STREET GRAFFITI

Defendants Verizon Communications, Inc. and Verizon New England, Inc. (collectively, "Verizon") respectfully submit this memorandum of law in support of their motion in limine to exclude, under Federal Rules of Evidence 402 and 403, all evidence relating to graffiti that allegedly appeared on a Verizon installation on Carew Street in Springfield, Massachusetts in 2003.[1]

## I.    Preliminary Statement

Plaintiff plans to introduce evidence at trial of racist and anti-Semitic graffiti that allegedly appeared on a Verizon installation known as a "cross-box" on Carew Street in Springfield in the spring of 2003. The Court should exclude all evidence relating to this Carew Street graffiti, under Federal Rule of Evidence 402, because it is not relevant to any fact at issue

---

[1] Defendants understand that the Court's deadline for filing motions in limine is one week before trial and that this motion is filed well in advance of that deadline. However, because the issues Defendants raise in this motion relate to and may have a substantial impact on this Court's ruling on Defendants' Motion to Disqualify Plaintiff's Counsel, filed with the Court today, Defendants believe that it would be beneficial to provide the Court with briefing on the underlying evidentiary issue. Defendants file this evidentiary motion without waiving their right to file any additional motions in limine on or before the court-established deadline.

in this case.  In the alternative, if the Court determines that the graffiti evidence is marginally

relevant, it should be excluded under Federal Rule of Evidence 403 because, in light of its

offensive and inflammatory nature and its lack of any relationship to Plaintiff's employment, its

probative value would be substantially outweighed by the danger of unfair prejudice that its

admission would create.

## II.    __Factual Background__

Plaintiff, a former Central Office Technician ("CO Tech") in Verizon's Holyoke,

Massachusetts Central Office ("Holyoke CO"), went out on mental disability leave in September

2002, allegedly as a result of race and gender discrimination that she had encountered in the

Holyoke CO and that Verizon management had failed to remedy.  She was cleared to return to

work in January 2003, but in a "different work environment."

In May 2003, Verizon offered to accommodate Plaintiff by transferring her to a CO Tech

position in its Worthington Street office in Springfield, Massachusetts.  Plaintiff rejected

Verizon's offer, claiming, among other things, that: (1) if she were to work in Springfield she

might encounter some of her former managers and co-workers from the Holyoke office, and

(2) there had been offensive graffiti (saying, "kill all niggers and jews") on a Verizon installation

on Carew Street in Springfield, and local managers had not promptly responded to employee

complaints about it.

Plaintiff intends to introduce evidence that the Carew Street graffiti was discovered by a

Verizon Outside Technician ("Outside Tech") in the spring of 2003, and that it was removed that

same spring.  Though in Springfield, the graffiti was not located at, and had no connection to, the

Worthington Street office.  Plaintiff intends further to introduce evidence that the Outside Tech

who noticed the graffiti reported it to his first- and second-level supervisors, and that these

supervisors responses were ineffective.  The supervisors who allegedly failed to respond

promptly to reports of the graffiti were Outside Tech managers, and they did not have, and would

not have had, any role in supervising Plaintiff, a CO Tech, if she had accepted the position in the

Worthington Street office.  Plaintiff, who was on extended leave from her position in the

Holyoke CO throughout the time that the Carew Street graffiti was allegedly present, has no

personal knowledge of the graffiti or of management's response to it.

## III.     Argument

Evidence of the Carew Street graffiti should be excluded because it is not relevant to any

fact at issue and, even if it were marginally relevant, in light of its offensive and inflammatory

nature, its meager probative value would be substantially outweighed by the danger of unfair

prejudice.

### A.     Evidence of the Carew Street Graffiti Should Be Excluded Under Rule 402 Because It Is Not Relevant to Any Fact in Issue in this Action.

Evidence of the Carew Street graffiti is not relevant, and should be excluded, because it

does not have "any tendency to make the existence of any fact that is of consequence to the

determination of the action more probable or less probable than it would be without the

evidence."  Fed. R. Evid. 401.  "Evidence which is not relevant is not admissible."  Fed. R. Evid.

402.  Plaintiff's claim is that the graffiti evidence is relevant to the reasonableness, under the

Americans with Disabilities Act (the "ADA") and chapter 151B, of Verizon's offered

accommodation of a CO Tech position in its Worthington Street office in Springfield.[2]

---

[2] Evidence of the graffiti, which allegedly appeared on Carew Street in Springfield after Plaintiff had stopped working at the Holyoke CO, does not make more or less probable the existence of any fact relating to Plaintiff's work at the Holyoke CO.  In addition, Plaintiff has argued that Verizon's offered accommodation was unreasonable because, had she worked in the Worthington Street office, she might have come into contact with her former co-workers and supervisors from Holyoke.  (See Exhibit A, Letter from Heisler to McGovern of 5/16/03, at 1;

Although Plaintiff has contended that evidence of the Carew Street graffiti is relevant to the accommodation issue in two respects, neither argument is apt. First, Plaintiff has contended that the graffiti demonstrates the unreasonableness of Verizon's offered accommodation because it inspired her own fears and concerns – but an accommodation's reasonableness under the ADA is an objective, not a subjective, determination; Plaintiff's fears and concerns are not relevant. Second, Plaintiff has contended that the graffiti demonstrates the unreasonableness of Verizon's offered accommodation because it revealed the Springfield managers' unresponsiveness to complaints about race discrimination – but Plaintiff would not have reported to the managers who allegedly failed to respond to complaints about the graffiti, and they would have had no supervisory responsibility over her; their alleged unresponsiveness is not relevant.

Plaintiff has argued that the Carew Street graffiti "exacerbated" her "extreme uneasiness" about the proposed transfer to the Worthington Street office (Pl.'s Mem. of Law in Opp. to Def.'s Mot. for Summ. J. at 46), and that the supervisors' responses to complaints about the graffiti "confirmed [her] fears about working in the Springfield office" (id. at 48). (See also Exhibit A, Letter from Heisler to McGovern of 5/16/03, at 1 (writing, in response to Verizon's offer of the Springfield position, that Plaintiff's "concerns have been dramatically heightened by" the graffiti incident).) But Plaintiff's feelings – her "uneasiness," her "fears," and her "concerns" – do not make the reasonableness of Verizon's offered accommodation any more or less probable, because an accommodation's reasonableness does not depend on the affected employee's subjective beliefs.

---

Exhibit B, Letter from Heisler to McGovern of 5/30/03, at 1-2.) The Carew Street graffiti evidence also is not relevant to that issue, especially because there is no evidence that any of Plaintiff's former co-workers and supervisors from Holyoke had any connection to the graffiti.

The reasonableness of a particular accommodation under the ADA is an objective, not a subjective, determination. See Reed v. LePage Bakeries, Inc., 244 F.3d 254, 259 n.3 (1st Cir. 2001) ("[W]hether a requested accommodation is reasonable . . . [is a] question[] typically proved through direct, objective evidence."); see also Smith v. Ameritech, 129 F.3d 857, 868 (6th Cir. 1997) (affirming summary judgment for defendants on ADA claim because "plaintiff failed to propose an objectively reasonable accommodation for his disability"). Indeed, "[b]y definition, the determination of reasonableness is an objective analysis, not a subjective one dominated by either party's concerns." Williams v. Channel Master Satellite Sys., Inc., 101 F.3d 346, 350 (4th Cir. 1996) (affirming summary judgment for defendants on ADA claim). Therefore, an employee's personal beliefs about the merits of her employer's offered accommodation are not relevant to the question of whether that accommodation is reasonable. See, e.g., Hedrick v. Western Reserve Care Sys., 355 F.3d 444, 458 (6th Cir. 2004) ("Thus, although Hedrick may have personally believed that she was overqualified for the position and that the salary was too low, WRCS satisfied its obligation under the ADA by offering a reasonable accommodation when it made the referral center scheduler position available to her.").

Federal courts' frequent willingness to dismiss ADA claims on summary judgment despite an employee-plaintiff's personal objection to an employer-defendant's offered accommodation demonstrates the irrelevance of the employee's subjective beliefs to the reasonableness inquiry. See, e.g., Pierson v. Lucent Techs. Inc., No. 04 C 7734, 2006 U.S. Dist. LEXIS 73827, at *11-12, 14 (N.D. Ill. Sept. 22, 2006) (granting summary judgment to defendant on ADA claim, where plaintiff did not attempt defendant's proposed accommodation and relied instead on her own opinion that the proposed accommodation was not reasonable); Chan v.

Sprint Corp., 351 F. Supp. 2d 1197, 1207-08 (D. Kan. 2005) (granting summary judgment to defendant on ADA claim, despite plaintiff's "feel[ing]" that defendant's proposed accommodation was not reasonable); Hinnershitz v. Ortep of Pa., Inc., No. 97-7148, 1998 U.S. Dist. LEXIS 20264, at *14-15 (E.D. Pa. Dec. 22, 1998) (granting summary judgment to defendant on ADA claim, despite plaintiff's "own self-judgment that he did not need" defendant's proposed accommodation).  "An employer is not obligated to provide an employee the accommodation he requests or prefers, the employer need only provide some reasonable accommodation."  Gile v. United Airlines, Inc., 95 F.3d 492, 499 (7th Cir. 1996); see also, e.g., Mastronicola v. Principi, No. 2:04-cv-1655, 2006 U.S. Dist. LEXIS 78879, at *13-14 (W.D. Pa. Oct. 30, 2006) (collecting cases).

Even putting aside the irrelevance, generally, of a party's subjective beliefs about the reasonableness of a particular accommodation under the ADA, Plaintiff's beliefs about the Carew Street graffiti are not well founded – they bear little relation to the objective reasonableness of the proposed transfer to Worthington Street.  While Plaintiff has alleged, for example, that Outside Techs "were exposed to [the Carew Street] graffiti every time we [sic] opened the cross box" (Pl.'s Mem. of Law in Opp. to Def.'s Mot. for Summ. J. at 47), *she* was never exposed to the graffiti, and would not have been exposed to it if she had worked in the Worthington Street office, as she was not an Outside Tech.  In any event, the Carew Street graffiti was removed before Plaintiff would have begun working in Springfield, it was not located in the Worthington Street office (where Plaintiff was offered a position), it is unknown who created the graffiti, and the supervisors who allegedly mishandled the incident would not have had any supervisory responsibility over Plaintiff.

Yet these supervisors' alleged responses appear to be Plaintiff's primary argument for the relevance of the Carew Street graffiti evidence.  When Verizon's EEO Management Consultant informed Plaintiff's attorney that his client's concerns about the Carew Street graffiti were unfounded because the graffiti "was not in the Springfield office, is being investigated, and is no longer present" (Exhibit C, Letter from McGovern to Heisler of 5/22/03), Plaintiff's attorney explained that Plaintiff was concerned, not because she would have been exposed to the graffiti itself, but rather because "the incident highlights the unwillingness of Verizon supervisors and managers working in the Springfield offices to respond in any meaningful way to racist and sexist actions of Verizon employees."  (Exhibit B, Letter from Heisler to McGovern of 5/30/03, at 1-2; see also Pl.'s Mem. of Law in Opp. to Def.'s Mot. for Summ. J. at 48 (arguing that Springfield supervisors' responses to complaints about the Carew Street graffiti "reinforced [Plaintiff's] conviction that she would continue to be vulnerable to unchecked harassment or retaliation if she were to accept a transfer to Springfield").)

But the Verizon employee who allegedly reported the Carew Street graffiti to his supervisors was an Outside Tech, as were, as Plaintiff has acknowledged, the other Verizon employees who were exposed to it.  (Pl.'s Mem. of Law in Opp. to Def.'s Mot. for Summ. J. at 47.)  The Outside Techs' alleged experiences, and their supervisors' alleged responsiveness to complaints, do not make the reasonableness of Verizon's offered accommodation of a CO Tech position at Worthington Street any more or less probable.  Plaintiff was a CO Tech, not an Outside Tech, and the Outside Techs' supervisors would not have supervised her.  Despite Plaintiff's apparent "conviction," the alleged unresponsiveness of particular Outside Tech supervisors does not make it more probable that she would "be vulnerable to unchecked harassment or retaliation if she were to accept a transfer to Springfield" (id. at 48) because it says

nothing about how Plaintiff's would-be supervisors would have responded to any complaints. The alleged unresponsiveness of supervisors who would not have supervised Plaintiff is not relevant to the reasonableness of Verizon's offer to transfer Plaintiff to a CO Tech position in the Worthington Street office.

Thus, because evidence of the Carew Street graffiti does not tend to show the objective unreasonableness of Plaintiff's proposed transfer to Worthington Street, whatever Plaintiff's subjective concerns or Outside Tech supervisors' unresponsiveness to complaints, the evidence is not relevant to any fact at issue in this action and should be excluded under Rule 402.

## B.    In the Alternative, the Carew Street Graffiti Evidence Should Be Excluded Under Rule 403 Because Its Danger of Unfair Prejudice Substantially Outweighs Its Probative Value.

The Carew Street graffiti evidence is offensive and inflammatory, and its admission would pose a great risk of unfair prejudice to Verizon.  On the other side of the Rule 403 balance, for the reasons discussed in Section III.A., supra, the evidence is not relevant to any fact in issue and therefore has no probative value.  Even if the evidence has some marginal relevance, though, its minimal probative value would still be substantially outweighed by the danger of unfair prejudice to Verizon that its admission would create.[3]

"Usually, courts use the term 'unfair prejudice' for evidence that invites the jury to render a verdict on an improper emotional basis."  United States v. Varoudakis, 233 F.3d 113, 122 (1st Cir. 2000).  "Unfair prejudice is that which could lead the jury to make an emotional or irrational decision, or to use the evidence in a manner not permitted by the rules of evidence."  Stephen A.

---

[3] "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Fed. R. Evid. 403.

Saltzburg, Daniel J. Capra, and Michael M. Martin, Commentary to Fed. R. Evid. 403.  The First Circuit has explained, "The drafters of Rule 403 expected 'unfair prejudice' to have multiple meanings.  '"Unfair prejudice" within its context means an undue tendency to suggest decision on an improper basis, commonly, *though not necessarily*, an emotional one.'"  Varoudakis, 233 F.3d at 122 n.6 (quoting Advisory Committee's Notes on Fed. R. Evid. 403 (emphasis added [by the court])).

The danger of the Carew Street graffiti evidence, of course, is that it will outrage and offend the jurors and lead them to find in favor of Plaintiff and against Verizon for emotional, not factual, reasons.  The Carew Street graffiti evidence is indisputably irrelevant to Plaintiff's race and sex discrimination claims, which relate entirely to events that occurred during her employment in Verizon's Holyoke office, especially since there is no evidence linking the co-workers whom Plaintiff alleges to have discriminated against her in Holyoke, or the managers who allegedly failed to respond to her complaints there, to the Carew Street graffiti.  The graffiti evidence's only even arguable relevance is to Plaintiff's disability claim – in particular, to the reasonableness of Verizon's offer to accommodate her alleged disability by transferring her to a position in the Springfield Central Office.  Yet the inflammatory graffiti evidence could lead the jury to reach an emotional verdict against Verizon on Plaintiff's factually unrelated claims of race and sex discrimination in the Holyoke office.

Particularly in discrimination cases, where the danger of unfair prejudice is high, federal courts have excluded inflammatory evidence that is likely to rouse the jury's emotions and produce a verdict on an improper basis.  See, e.g., Tennison v. Circus Circus Enters., Inc., 244 F.3d 684, 689-90 (9th Cir. 2001).  In Tennison, a sexual harassment case, the Ninth Circuit held that the district court did not abuse its discretion in excluding, under Rule 403, testimony

regarding the sexual harassment of non-plaintiffs.  Id.  Although the excluded evidence was

probative of management's notice of improper conduct and failure to take adequate remedial

measures, "the trial court could reasonably conclude that admitting [this] testimony, along with

Defendants' rebuttal evidence, would create a significant danger that the jury would base its

assessment of liability on remote events involving other employees, instead of recent events

concerning Plaintiffs."  Id.; see also, e.g., Goulah v. Ford Motor Co., 118 F.3d 1478, 1483-84

(11th Cir. 1997) (in products liability action based on automobile rollover, district court properly

excluded, under Rule 403, evidence that defendant's employee had said it was "acceptable to kill

people"); Figures v. Bd. of Pub. Utils., 967 F.2d 357, 360 (10th Cir. 1992) (in race

discrimination action, district court did not abuse its discretion in excluding, under Rule 403,

"testimony concerning racial comments allegedly made by [two] defendants"); Fortino v Quasar

Co., 950 F.2d 389, 395 (7th Cir. 1991) (in age discrimination action, district court should have

excluded, under Rule 403, manager's statement regarding age of employees in his group, since

plaintiffs were not in that group and manager had no role in their discharge); Haskell v. Kaman

Corp., 743 F.2d 113, 121-22 (2d Cir. 1984) (in age discrimination action, district court should

have excluded, under Rule 403, former employees' testimony regarding circumstances of their

terminations, where such evidence was insufficient to show pattern and practice of

discrimination and was not relevant to question of whether plaintiff was terminated because of

age); Mingo v. Roadway Express, Inc., 135 F. Supp. 2d 884, 892 (N.D. Ill. 2001) (in sexual

harassment case, excluding, under Rule 403, evidence of racially derogatory statement made by

defendant's employee, where plaintiff did not hear statement).

　　　　In light of the facts that Plaintiff did not see the Carew Street graffiti, the graffiti was

removed before Plaintiff would have begun working at the Springfield office, Plaintiff would not

have been exposed to the graffiti even if she had been working in Springfield while it was present, and the managers who allegedly failed to respond to complaints about the graffiti would not have supervised Plaintiff in Springfield, the Carew Street graffiti evidence has little, if any, probative value. Even if marginally relevant, evidence of the graffiti is probative of neither the likelihood that Plaintiff would face harassment or discrimination in the Springfield office nor her would-be Springfield managers' likely response to such harassment or discrimination. Because offensive and inflammatory evidence poses a great danger of unfair prejudice in the form of an emotional, rather than a factual, verdict, to the extent the Carew Street graffiti evidence is relevant, it should be excluded under Rule 403.

## IV.    Conclusion

For the foregoing reasons, Verizon respectfully requests that the Court exclude all evidence relating to the Carew Street graffiti.

Respectfully submitted,

DEFENDANTS, VERIZON
COMMUNICATIONS, INC. AND
VERIZON NEW ENGLAND, INC.

    /s/ Stacy Smith Walsh
Victoria Woodin Chavey (*pro hac vice*)
Stacy Smith Walsh (BBO No. 647420)
Day Pitney LLP
CityPlace I
Hartford, Connecticut 06103-3499
(860) 275-0100
(860) 275-0343 (fax)
vwchavey@daypitney.com
sswalsh@daypitney.com
Their Attorneys

-11-

## CERTIFICATE OF SERVICE

I hereby certify that on April 20, 2007, a copy of foregoing **Defendants' Memorandum of Law in Support of Motion in Limine to Exclude Evidence of Carew Street Graffiti** was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Stacy Smith Walsh
Stacy Smith Walsh

# EXHIBIT A

# Heisler, Feldman & McCormick, P.C.

Attorneys at Law

Hugh D. Heisler
Joel H. Feldman
Thomas J. McCormick
Suzanne Garrow

May 16, 2003

Paul McGovern
EEO Management Consultant
Verizon
125 High Street, Room 817
Boston, MA 02110

Re:   Rhonda Hall v. Verizon
      MCAD Docket No. 02 SEM 3273

Dear Mr. McGovern:

I am in receipt of your letter dated May 9, 2003. Please accept this letter as further confirmation that Ms. Hall has not abandoned her employment and she has no intention of abandoning her employment. It continues to be her position that she remains eligible for Sickness Disability Benefits, and she is aggressively pursuing her appeal of the decision discontinuing those benefits.

We are in the process of evaluating your offer to transfer Ms. Hall to Verizon's Springfield facilities without conditions. Ms. Hall has serious concerns about the prospect of working in an office with the same individuals who supervised her work in Verizon's Holyoke office. These supervisors have already demonstrated an unwillingness or inability to take prompt and appropriate remedial action to eradicate the hostile work environment to which Ms. Hall was subjected in the Holyoke office. The actions and inaction of Jack Lynch in particular directly contributed to this hostile work environment. As a consequence, Ms. Hall has no confidence that these same supervisors would act any differently should there be further occurrences of hostile treatment in Springfield if she were to accept the proposed transfer. Her concerns have been dramatically heightened by recent events in Verizon facilities in Springfield. In particular, Verizon managers and supervisors in Springfield took no steps over an extended period of time to remove white supremacist graffiti authored by a Verizon employee which advocated the murder of "niggers and jews." This extremely offensive and frightening material remained visible to Verizon employees for approximately one month, despite repeated requests from African American employees to have it removed.

Paul McGovern
May 16, 2003
Page 2


We are awaiting receipt of more recent medical records relating to the transfer of Ms. Hall to the Springfield facilities of Verizon which you have proposed, and I will contact you immediately upon receipt of these additional records.

Very truly yours,

Hugh D. Heisler

cc:    Rhonda Hall
       Maryann Brunton

# EXHIBIT B

# Heisler, Feldman & McCormick, P.C.

Attorneys at Law

Hugh D. Heisler
Joel H. Feldman
Thomas J. McCormick
Suzanne Garrow

BY FACSIMILE AND FIRST CLASS MAIL

May 30, 2003

Paul McGovern
EEO Management Consultant
Verizon
125 High Street, Room 817
Boston, MA 02110

Re:    Rhonda Hall v. Verizon
       MCAD Docket No. 02 SEM 3273

Dear Mr. McGovern:

I am writing as a follow-up to my letter to you dated May 9, 2003. I am enclosing a copy of a letter dated May 13, 2003 from Dr. David Honeyman, Ms. Hall's psychiatrist, to attorney Judd Peskin. A copy of this letter was previously supplied to attorneys for Verizon by attorney Peskin. In this letter, Dr. Honeyman expresses his belief that Ms. Hall would not be able to manage the level of distress she would likely feel if she were to be transferred into a similar position in Verizon's Springfield office. Dr. Honeyman correctly notes that such a transfer would require that Ms. Hall continue interacting and having contact with managers and supervisors whose actions and inaction contributed to the hostile work environment she experienced in the Holyoke office.

In your letter to me dated May 22, 2003, you state that Ms. Hall would have little or no interaction with Mr. Lynch if she accepted a transfer to the Springfield office. Ms. Hall does not draw much comfort or reassurance from this statement. In a letter dated May 20, 2003, Ms. Hall received a terse directive to report to work at the Springfield office on May 26, 2003 or risk the termination of her employment. This directive was issued by none other than Jack Lynch in his capacity as "Turf Team Leader." Merely assigning Ms. Hall to a different first level supervisor does not alter the fact that she would have to continue working with the same supervisors and managers who persistently ignored and contributed to hostile working conditions in the Holyoke facility. In my May 16th letter to you, I mentioned the incident involving the vile racist graffiti in the cross box at 410 Carew Street in Springfield not because

---

Paul McGovern
May 30, 2003
Page 2

Ms. Hall had any concerns that she personally would be exposed to this hateful material. Rather, the incident highlights the unwillingness of Verizon supervisors and managers working in the Springfield offices to respond in any meaningful way to racist and sexist actions of Verizon employees. Ms. Hall is also concerned that a transfer into a position which would require her to have regular contact with supervisors, managers and other Verizon employees with whom she previously worked would expose her to an increased risk of retaliatory treatment.



Paul McGovern
May 30, 2003
Page 3


I look forward to hearing from you.

Very truly yours,


Hugh D. Heisler


cc:    Rhonda Hall (w/copy)
       Maryann Brunton (w/copy)

# EXHIBIT C

Paul McGovern
EEO Management Consultant

**veri<sub>z</sub>on**

125 High Street, Room 817
Boston, Massachusetts 02110

Phone: 617 743-4996
Fax:  617 743-1369
paul.s.mcgovern@verizon.com

VIA FAX AND OVERNIGHT MAIL

May 22, 2003

Hugh D. Heisler, Esq.
Heisler, Feldman & McCormick, P.C.
1145 Main Street, Suite 508
Springfield, MA 01103

          RE:     Rhonda Hall

Dear Attorney Heisler:

          I am in receipt of your correspondence dated May 16, 2003.  Please be advised that your letter does not set forth any acceptable reason for Ms. Hall to fail to report to work in Springfield, in accordance with the company's unconditional offer of a transfer. Ms. Hall would have a new direct supervisor, and would have little or no interaction with Mr. Lynch.   Furthermore, your alleged concerns regarding offensive graffiti are unfounded – the offensive statement at issue was not in the Springfield office, is being investigated, and is no longer present.

          Ms. Hall is expected to return to work at 8:00 a.m. on Monday, May 26, 2003 at 295 Worthington Street, Springfield. As you know from prior correspondence, should Ms. Hall not report at that time and place, she will be subject to termination for job abandonment.

                              Sincerely,

                              Paul McGovern

cc.  Maryann Brunton