UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
:
RHONDA HALL,                        :
                                    :
            Plaintiff,              :
                                    :
V.                                  :    Civil Action No. 3:05-cv-30002-MAP
                                    :
VERIZON COMMUNICATIONS, INC.,       :
and VERIZON NEW ENGLAND, INC.       :
                                    :
            Defendants.             :
_____:

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITIONTO
DEFENDANT'S MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL**

**I.    Factual and Procedural Background**

The facts underlying the plaintiff's claims in this case are set forth in detail in her Statement of Disputed Facts submitted in opposition to the defendants' motion for summary judgment. This Statement was filed with the court and entered on the Civil Docket as entry number 32, and is incorporated here by reference.

By letter dated April 3, 2003, the plaintiff's attorney, Hugh Heisler (hereafter referred to as "Attorney Heisler"), filed his Appearance on behalf of Ms. Hall in the proceeding before the Massachusetts Commission against Discrimination (MCAD) which Ms. Hall had previously initiated against the defendants. *See*, Affidavit of Hugh Heisler submitted in support of the plaintiff's opposition to the defendants' motion to disqualify counsel (hereafter "Heisler Aff."), ¶ 2. Soon thereafter, Attorney Heisler received a letter from an MCAD Compliance Officer in which she advised him that the defendants had expressed an interest in mediating the charge filed by Ms. Hall.

1

There followed a round of correspondence between Attorney Heisler and Paul McGovern, an EEO officer for Verizon, in which they briefly explored options which might enable Ms. Hall to return to work for the defendants. This correspondence ended after Ms. Hall's employment for Verizon was abruptly terminated effective May 26, 2003. Verizon had extended a single, take-it-or-leave-it offer to Ms. Hall of a transfer to a position in Verizon's Springfield Central Office. In a letter to Ms. Hall dated May 20, 2003, Ms. Hall's former supervisor directed Ms. Hall to return to work on May 26, 2003 in the Springfield Central Office position or be terminated from her employment. As attested to by her psychiatrist, Ms. Hall was psychologically unable to assume the Springfield position, and she advised her supervisor of this fact in a responsive letter to him dated May 21, 2003. Ms. Hall was fired when she did not show up to work in Springfield as instructed. *See*, Heisler Aff., ¶¶ 3 – 4.

     In their pending motion, the defendants contend that the correspondence between Attorney Heisler and Mr. McGovern makes Attorney Heisler a necessary witness in this case and disqualifies him from continuing to represent Ms. Hall. The defendants have been aware for approximately four years that Attorney Heisler penned the letters which now form the basis for their present motion There is no dispute that the defendants received these letters in April and May of 2003. *See*, Heisler Aff., ¶ 21. The defendants have also known for over two and a half years that the plaintiff was likely to rely on the correspondence between Mr. McGovern and Attorney Heisler in support of the plaintiff's claims. In the plaintiff's Initial Disclosures served on the defendants on August 20, 2004, the plaintiff listed this correspondence among the "Categories of Documents Which May Be Used to Support Plaintiff's

2

Claims." *See*, Heisler Aff., ¶ 22. The defendant's waited until April 20, 2007 to file the motion to disqualify Attorney Heisler, and the trial in this matter is scheduled to begin July 1, 2007.

## II.     Legal Argument

The standards for disqualification of an attorney who may be a witness at trial are derived from the Massachusetts Rules of Professional Conduct which have been adopted by the District of Massachusetts pursuant to Local Rule 83.6(4)(B). Rule 3.7 provides in relevant part:

> (a)     A lawyer shall not act as advocate at trial in which the lawyer is likely to be a necessary witness except where:
>
> (1)     the testimony relates to an uncontested issue;
>
> (2)     the testimony relates to the nature and value of legal services rendered in the case; or
>
> (3)     disqualification of the lawyer would work a substantial hardship on the client.

Numerous courts have recommended that motions to disqualify counsel be viewed with extreme caution for they can be misused as a technique of harassment and subterfuge, and courts should be particularly sensitive to the potential for abuse when the party seeking disqualification is also the one asserting a need to call the attorney as a witness. *See eg., Chapman Engineers v. Natural Gas Sales Co.*, 766 F.Supp. 949, 954 & 959 (D.Kan.1991); *Kalmanovitz v. G. Heileman Brewing Co.*, 610 F.Supp. 1319, 1323 (D.Del.1985) ("motions to disqualify are often disguised attempts to divest opposing parties of their counsel of choice"); *Carta v. Lumbermens Mutual Casualty Co.*, 419 F.Supp2d 23, 28-29 (D.Mass.2006). Courts have further recognized that "[t]he right to be represented by counsel of choice is an important

3

one subject to override only upon a showing of compelling circumstances."
*Chapman*, 766 F.Supp. at 954. The Supreme Judicial Court has described disqualification as "a drastic measure which courts should hesitate to impose except when absolutely necessary." *Adoption of Erica*, 426 Mass. 55, 58, 686 N.E.2d 967, 970 (1997).

In their pending motion, the defendants acknowledge that "[t]he party moving for disqualification of a lawyer under Rule 3.7 has the burden of showing that the lawyer `is likely to be a necessary witness' by demonstrating that the lawyer's testimony is relevant to disputed, material questions of fact and that there is no other evidence available to prove those facts." *Carta*, 419 F.Supp. at 29 (citation omitted); *See also, Merrill Lynch Business Financial Svcs., Inc. v. Nudell,* 239 F.Supp.2d 1170, 1173 (D. Colo., 2003)( "A lawyer is likely to be a necessary witness where the proposed testimony is relevant, material, not merely cumulative, and unobtainable elsewhere"). None of the above criteria are even remotely satisfied in this case.

**A.   Attorney Heisler does not have personal knowledge of any disputed facts which are material to the issues in this case.**

The brief exchange of correspondence between Paul McGovern and Attorney Heisler does not render Attorney Heisler a necessary witness in this case. Attorney Heisler did **not** at the time of this correspondence nor does he today have any independent personal knowledge of any material fact recounted in his letters to Mr. McGovern. *See*, Heisler Aff., ¶ 16. As in any negotiation involving lawyers, Attorney Heisler's role in this sequence of correspondence was to advocate for his client and present her position in as clear and persuasive a manner a possible. *See*, Heisler Aff., ¶ 5. As Ms. Hall's legal representative, Attorney Heisler did what attorneys

4

routinely do during the course of a legal dispute: he conveyed the position of his client to the person representing the opposing party and he recited certain facts in support of that position as those facts were presented to him by his client and as reflected in other supporting documentation. *See*, Heisler Aff., ¶ 18.

In arguing that Attorney Heisler is a necessary witness in this case, the defendants place particular emphasis on two letters Attorney Heisler sent to Mr. McGovern in May 2003. However, as he has unequivocally stated in his sworn affidavit which accompanies this memorandum of law, Attorney Heisler has no independent knowledge of any of the facts material to the issues in this case conveyed to Mr. McGovern in either of these letters. *See*, Heisler Aff., ¶ 16.  In the first of these letters, Attorney Heisler reiterated Ms. Hall's position that she had no intention of abandoning her employment at Verizon. Attorney Heisler advised Mr. McGovern that Ms. Hall was evaluating Verizon's offer of a transfer to a position in the Springfield Central Office and he summarized Ms. Hall's initial concerns as she communicated them to him regarding this proposed transfer. Chief among Ms. Hall's concerns which Attorney Heisler passed on to Mr. McGovern was that she would continue to have interaction with her former first and second level supervisors and the former co-worker who cut her hair with a pair of needle nose pliers. Attorney Heisler also related Ms. Hall's concern about information obtained by Ms. Hall about extremely threatening and offensive graffiti inscribed on the inside of a Verizon "cross box" in Springfield, as well as information about the difficulties encountered by other African American employees in getting Verizon supervisors and managers in Springfield to take any action to remove this graffiti. Attorney Heisler also advised Mr.

5

McGovern that Ms. Hall was awaiting receipt of further medical documentation related to Verizon's demand that she return to work in the Springfield Central Office, and he reassured Mr. McGovern that he would contact Mr. McGovern immediately upon receipt of this additional medical documentation. *See*, Heisler Aff., ¶ 7.

In the second letter appended to the defendants' pending motion, Attorney Heisler transmitted to Mr. McGovern the additional medical documentation referred to in his earlier letter, and he highlighted certain of the conclusions expressed by Ms. Hall's psychiatrist in the enclosed report. Attorney Heisler further summarized certain of the reasons expressed by Ms. Hall and her psychiatrist for Ms. Hall's inability to return to work in Verizon's Springfield Central Office. The balance of the letter (which has been redacted and would not be disclosed to a jury should the letter be admitted into evidence) is devoted to a presentation of an initial proposal for the settlement of Ms. Hall's claims for damages. *See*, Heisler Aff., ¶ 8.

There is nothing in these two letters which suggests, much less demonstrates that Attorney Heisler has personal knowledge of any of the facts recounted in the letters. Falling far short of their burden in bringing a motion to disqualify the plaintiff's attorney of choice, the defendants do not point to a single shred of evidence that Attorney Heisler has independent knowledge of any fact which is relevant and material to the issues in this case about which he would be competent to testify at trial. Rather, it is immediately apparent from their proffer of the testimony they would elicit from Attorney Heisler (*See*, Defendant's Memorandum of Law, pp. 5 & 6) that their proposed line of questioning would amount to little more than a fishing expedition through which they would attempt to determine whether or not Attorney

Heisler does in fact have any such personal knowledge. Four years into this legal dispute and long after the close of discovery, the defendants now for the first time claim to have a compelling need to question Attorney Heisler at the upcoming trial about whether he has "any information … regarding who wrote the graffiti" in the Springfield cross box, and whether he has any "knowledge of the managers and supervisors to whom complaints about the graffiti were allegedly made," and "whether he consulted with any of Plaintiff's medical treatment providers as to the effect that the graffiti … had or would have on Plaintiff." [1]

The defendants do not refer to a single case in which a court has ordered the preemptive disqualification of an attorney in order to afford the opposing party an opportunity to engage in an open-ended exploration into whether the attorney possesses sufficient personal knowledge of material facts to justify the disqualification. The right of a party to their attorney of choice is simply not defeated on such a flimsy pretext. In cases where courts have ordered the disqualification of attorneys under Rule 3.7, the attorneys have had direct personal knowledge of or involvement in certain events or transactions which are at the heart of the factual

---

[1] It is also apparent from the defendants' proffer that In the process of examining Attorney Heisler the defendants believe they would not be constrained in the least by the protections afforded represented litigants by the attorney-client privilege and the attorney work product doctrine. An argument can certainly be made that the voluntary disclosure in Attorney Heisler's letters of Ms. Hall's communications with him regarding her reasons for being unable to take the Springfield Central Office position would constitute a limited waiver of the attorney-client privilege, but only as to other communications relating to the same subject matter. *See eg.*, *U.S. v. Jones*, 696 F.2d 1069, 1072 (4th Cir.1982). Even were such a subject matter waiver to apply to the facts disclosed in Attorney Heisler's letters, the defendants did not make any attempt throughout the entire discovery process in this case to inquire of either Ms. Hall or Attorney Heisler as to whether Attorney Heisler himself possessed any personal knowledge of the facts disclosed in the letters. *See*, Heisler Aff., ¶¶ 14-16. In support of its decision upholding the denial of a disqualification motion, the court in *Optyl Eyewear Fashion International Corp. v. Style Companies, Ltd.*, 760 F.2d 1045 (9th Cir.1985), cited the fact that the defendants had made no attempt to depose the plaintiff's counsel prior to moving for their disqualification. *Id.* at 1049.

7

issues in dispute. *See eg.*, *American Hosp. Supply Corp. v. Roy Lapidus, Inc.,* 493 F.Supp. 1076, 1078 (D.Mass.1980) (disqualifying attorney "because of his active role in the sale which [was] the subject matter of [the] litigation"); *Carta*, 419 F.Supp. 2d at 29-30 (the plaintiff's "two attorneys [were] the only people who [would] be able to testify on the plaintiff's behalf about the settlement negotiations" in a prior proceeding which were the subject of the plaintiff's unfair settlement practices claim); *Debiasi v. Charter County of Wayne*, 284 F.Supp.2d 760 (E.D. Mich., 2003)(in discrimination case involving failure to promote claims, plaintiff's lawyer had direct personal knowledge of promotion policies and decisions of the defendant employer); *Brennan v. Independence Blue Cross*, 949 F.Supp. 305, 309-310 (E.D. Pa., 1996) (attorney for plaintiff claiming a waiver by medical insurer of its' subrogation rights had gained first hand knowledge of the scope and value of insurer's subrogation rights in prior medical malpractice case); *Lease v. Rubacky*, 987 F.Supp. 406, 408, fn. 4 (E.D. Pa., 1997)(plaintiff's attorney in breach of contract action disqualified because he was only person involved in reaching oral agreement with defendant).

In distinct contrast to the above-cited cases, the Ninth Circuit found in a case which is somewhat analogous to this one that attorneys who were involved in drafting a letter which later became the subject of a libel counterclaim by the defendants were not subject to disqualification. *Optyl Eyewear Fashion International Corp. v. Style Companies, Ltd.*, 760 F.2d 1045 (9th Cir.1985). The *Optyl* court not only upheld a trial court decision denying the defendant's motion to disqualify plaintiff's counsel, but further upheld an order assessing sanctions under 28 U.S.C. § 1927 directly against the attorney for the defendant for having brought the disqualification motion. The

same result should follow in this case.

    **B.    Any testimony which would be offered by Attorney Heisler at trial would be uncontested and fall within the exception set forth in Rule 3.7(a)(1).**

There is no dispute in this matter about the sending and receipt of the correspondence between Attorney Heisler and Paul McGovern. However, if the parties are unable to stipulate to the sending and receipt of this correspondence, the letters would be offered into evidence either through Attorney Heisler or through Mr. McGovern, who would be called as an adverse witness for the plaintiff. If any testimony from Attorney Heisler were needed, he would **only** testify to the undisputed fact that he prepared and sent the letters. This is the only information about which he possesses independent knowledge. *See*, Heisler Aff., ¶¶ 9 & 16. There is no dispute in this matter that the defendants received the letters. There is also no dispute that there were no oral communications between Attorney Heisler and Mr. McGovern. All communications between them were conducted in writing so that there could be no dispute about the content of these communications. Thus, any testimony which would be offered by Attorney Heisler at trial would be uncontested and fall within the exception set forth in Rule 3.7(a)(1).

The letters sent to Mr. McGovern by Mr. Heisler would **not** be offered to prove the truth of any factual information related to Mr. McGovern in the letters. Attorney Heisler's letters to Mr. McGovern (and Mr. McGovern's responses) would be offered only to show the course of the interactive dialogue (such as it was) between Ms. Hall and the defendants with respect to Ms. Hall's need for an appropriate accommodation, and to show that the defendants were on notice as to Ms. Hall's

position with respect to the singular accommodation of her disability offered by the defendants. In particular, the correspondence will be offered to show that: 1) the defendants were placed on notice that Ms. Hall had not abandoned her employment; 2) the defendants were placed on notice that Ms. Hall had no intention of abandoning her employment; 3) the defendants were placed on notice that both Ms. Hall and her psychiatrist believed that the one transfer being offered to her by the defendants would have an adverse psychological impact upon Ms. Hall; and 4) the defendants were made aware of certain of the reasons underlying Ms. Hall's decision and her psychiatrist's medical judgment that she would be unable to tolerate a transfer into that particular job. *See*, Heisler Aff., ¶ 10.

    **C.**    **Direct evidence of factual assertions contained in Attorney Heisler's letters are readily obtainable from other witnesses who have been known to the defendants since the inception of this litigation.**

Direct evidence of the truth of any facts conveyed in Attorney Heisler's letters to Mr. McGovern will be provided in the form of testimony from other witnesses who have personal knowledge of these facts. In particular, Ms. Hall will testify about the facts underlying her reasons for rejecting the one-time, take-it-or-leave-it offer by Verizon of a transfer to the Springfield Central Office. Ms. Hall's treating psychiatrist will testify about the medical basis for his conclusion that Ms. Hall would not have been able to tolerate the stress she would have likely experienced had she accepted this offer and begun working in the Springfield Central Office. Ms. Hall will further testify about her knowledge of the likely frequency with which she would have had ongoing contact with her former supervisors and the former co-worker who cut her

10

hair with a pair of needle-nose pliers had she taken the Springfield Central Office position. She will also testify about the information she obtained regarding the cross box graffiti and the unaccountable delays by Verizon managers in responding to repeated complaints from African American employees about the graffiti. She will testify about how she obtained this information and the impact that this information had on her ability to return to work in the Springfield Central Office position. *See*, Heisler Aff., ¶ 11.

In their motion to disqualify Attorney Heisler and in their accompanying Memorandum of Law, the defendants studiously avoid any mention of the fact that they are well-aware of the testimony Ms. Hall will offer regarding the facts set forth in Attorney Heisler's letters to Paul McGovern. The defendants disingenuously fail to mention that the substance of the above testimony from Ms. Hall has already been communicated to them in Ms. Hall's lengthy deposition testimony and in a detailed affidavit submitted in support of her opposition to the defendants' motion for summary judgment in this matter. This affidavit was electronically served upon the defendants and entered by the court on the Civil Docket as entry number 36. The defendants also do not disclose in their motion papers that Ms. Hall's deposition testimony and the statements contained in her previously filed affidavit are entirely consistent with the facts recounted by Attorney Heisler in his letters to Mr. McGovern. *Id.*

With respect to the underlying facts surrounding the cross box graffiti, Greg Drew, a former African American Outside Technician for the defendants, will testify from his own direct personal knowledge about discovering and photographing the graffiti. He will testify that only Verizon employees had access to the inside of the

cross box where the graffiti was located. He will describe his unsuccessful attempts to get several levels of Verizon supervisors and managers to respond to his complaints about the graffiti, and he will testify that this problem was not ultimately resolved until he personally took it upon himself to remove the graffiti. *See*, Heisler Aff., ¶ 12.

     A necessary implication to be drawn from the defendant's pending disqualification motion, which is reinforced by their proffer of the testimony they would elicit from Attorney Heisler (*See*, defendant's Memorandum of Law, pp. 5-6), is that evidence relating to the cross box graffiti and the failure of Verizon managers to respond to complaints about the graffiti is only available through the testimony of Attorney Heisler, and is unobtainable from any other source. *See*, *Carta*, 419 F.Supp.2d at 30 (disqualification of an attorney is appropriate when the attorney "can testify to facts about which no one else can testify"). However, as with the substance of the testimony which will be offered by Ms. Hall, the substance of Mr. Drew's testimony was well-known to the defendants long before they filed their pending disqualification motion, although their knowledge of Mr. Drew's testimony is not revealed anywhere in their motion papers. The defendants were on notice that Mr. Drew was a fact witness in this case at least as early as August 20, 2004 when they were served with the Plaintiff's Initial Disclosures pursuant to Fed.R.Civ.P. 26(a)(1). The substance of Mr. Drew's testimony was communicated to the defendants in a detailed affidavit also submitted in support of Ms. Hall's opposition to the defendants' motion for summary judgment in this matter. Mr. Drew's Affidavit was filed with the court and entered on the Civil Docket as entry number 37. If, as they claim in their

motion, the defendants really had a compelling need to explore the facts relating to the cross box graffiti and the failure of their Springfield-based managers to respond to complaints about the graffiti in an effective and timely manner, they could have taken the oral deposition of Mr. Drew. They did not to do so. *See*, Heisler Aff., ¶ 13.

The defendants have failed to demonstrate that the testimony they propose to elicit from Attorney Heisler is unobtainable elsewhere, and their disqualification motion should be denied.

> **D.     The disqualification motion filed by counsel for the defendants has unreasonably and vexaciously multiplied the proceedings in this case, and appropriate sanctions should be assessed directly against them pursuant to 28 U.S.C. § 1927.**

Under 28 U.S.C. § 1927, any attorney who multiplies the proceedings in any case unreasonably or vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct. If an attorney's conduct in multiplying proceedings is unreasonable and harassing or annoying, sanctions may be imposed under section 1927. The attorney need not intend to harass or annoy by his conduct nor be guilty of conscious impropriety to be sanctioned. It is enough that an attorney acts in disregard of whether his conduct constitutes harassment or vexation, thus displaying a "serious and studied disregard for the orderly process of justice." *Cruz v. Savage*, 896 F.2d 626, 631-632 (1st Cir.1989). While an attorney's bad faith will always justify sanctions under section 1927, a finding of subjective bad faith as a predicate to the imposition of sanctions is not required. *Id.*

13

Evidence of the unreasonable and vexatious nature of the motion to disqualify filed by defendants' counsel is apparent in the timing of their motion. The defendants' have been aware for approximately four years that Attorney Heisler penned the letters which form the basis for their present motion. There is no dispute that the defendants received these letters in April and May of 2003. The defendants have known for approximately two years that the plaintiff was likely to rely on the correspondence between Attorney Heisler and Paul McGovern in support of Ms. Hall's claims in this case. In the plaintiff's Initial Disclosures served on the defendants on August 20, 2005, the plaintiff listed this correspondence among the "Categories of Documents Which May Be Used to Support Plaintiff's Claims." Under these circumstances, there can be no possible justification for waiting until less than three months before the scheduled trial in this matter to file a motion to disqualify plaintiff's counsel of choice.

Evidence of the unreasonable and vexatious nature of the motion to disqualify filed by defendants' counsel is further apparent in the utter lack of merit to the motion, as more fully discussed in the preceding sections of this Memorandum. In the *Optyl Eyewear* case, the court upheld an order assessing sanctions under 28 U.S.C. § 1927 directly against the attorney for the defendant in large measure due to the court's assessment that the defendant's disqualification motion was without merit. *Optyl*, 760 F.2d at 1048. Defendants' counsel acknowledge in bringing their motion that they have the burden of establishing that the proposed testimony of Attorney Heisler is unobtainable from any other source. However, as more fully described in the preceding section of this Memorandum, there is simply no question that

14

defendants' counsel were fully aware at the time they filed their disqualification motion of the availability of other witnesses with far more direct personal knowledge than Attorney Heisler of the facts conveyed in his correspondence with Paul McGovern. The absence of any reference in their motion to this readily available testimony suggests that this omission was deliberate.

Knowing that they have the burden in bringing this disqualification motion of showing that Attorney Heisler's testimony would be relevant and material to disputed questions of fact in this case, defendants' counsel are unable to point to any particular uncontested material fact about which Attorney Heisler has independent personal knowledge. Rather, the testimony they propose to pursue with Attorney Heisler at trial would be nothing more than an exploration into the scope and substance of his personal knowledge. They have filed their disqualification motion without having made any attempt during the lengthy discovery process in this case to determine in advance the extent and relevance of Attorney Heisler's personal knowledge. No effort was made to depose Attorney Heisler, and no effort was made during the lengthy deposition of Ms. Hall to determine the extent to which the factual information conveyed by Attorney Heisler in his correspondence with Mr. McGovern was derived solely from information which Ms. Hall provided to him. Without knowing in advance what Attorney Heisler would say in response to the questions they propose to ask him, defendants' counsel would call him as a witness at their peril. Most competent trial attorneys would be loathe to call any witness (much less an adverse witness such as the opposing party's former attorney) to the stand at trial without knowing the substance of their testimony and without having some degree of

confidence that such testimony would be helpful to their clients' cause. The probability that anything Attorney Heisler would have to say on the witness stand would only serve to bolster the plaintiff's case suggests that experienced attorneys such as defendants' counsel have no real intention of calling Attorney Heisler as a witness, and that their pending motion to disqualify him because he is alleged to be a 'necessary witness' is little more than a subterfuge intended either to deprive the plaintiff of her chosen attorney, or at least to divert Attorney Heisler from meaningful preparation for the upcoming trial.

Such tactics should not be countenanced by the court, and excess costs and expenses, including attorney's fees, should be assessed directly against defendants' counsel.

### XI.   CONCLUSION

For all the reasons set forth above, the plaintiff respectfully requests that the defendant's motion to disqualify plaintiff's counsel be denied, and that excess costs and expenses, including attorney's fees, be assessed directly against defendants' counsel.

Dated:  May 14, 2007

Respectfully submitted,
PLAINTIFF RHONDA HALL
By her Attorney,

  /s/ Hugh D. Heisler
Hugh D. Heisler
BBO # 563925
Heisler, Feldman, McCormick &
    Garrow, P.C.
1145 Main Street, Suite 508
Springfield, MA 01103
(413) 788-7988

CERTIFICATE OF SERVICE

    I, Hugh D. Heisler, hereby certify that a true copy of the foregoing Memorandum of Law was served electronically upon the attorney of record for the Defendants on May 14, 2007.

                                          /s/ Hugh D. Heisler
                                          Hugh D. Heisler