UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RHONDA HALL,<br><br>　　　　　　Plaintiff,<br><br>V.<br><br>VERIZON COMMUNICATIONS, INC.,<br>and VERIZON NEW ENGLAND, INC.<br><br>　　　　　　Defendants. | Civil Action No. 3:05-cv-30002-MAP |

**AFFIDAVIT OF HUGH HEISLER**

I, Hugh Heisler, being of full age, hereby depose and state:

1.I am the attorney for plaintiff Rhonda Hall in the above-entitled matter, and I make this affidavit in support of the plaintiff's Opposition to the defendants' pending motion to disqualify me as counsel for Ms. Hall.

2.By letter dated April 3, 2003, I filed my Appearance on behalf of Ms. Hall in the proceeding before the Massachusetts Commission against Discrimination (MCAD) which Ms. Hall had previously initiated against the defendants.

3.Soon thereafter, I received a letter from an MCAD Compliance Officer in which she advised me that defendants had expressed an interest in mediating the charge filed by Ms. Hall.

4.There followed a round of correspondence between myself and Paul McGovern, an EEO officer for Verizon, in which we briefly explored options which might enable Ms. Hall to return to work for the defendants. This correspondence ended after

1

Ms. Hall's employment for Verizon was abruptly terminated effective May 26, 2003 when she did not return to work in the Verizon Central Office in Springfield as instructed by her first level supervisor, John Lynch.

5. As in any negotiation involving attorneys, my role in this sequence of correspondence was to advocate for my client and present her position in as clear and persuasive a manner a possible.

6. The defendants now contend that this correspondence between me and Mr. McGovern makes me a necessary witness in this case and disqualifies me from continuing to represent Ms. Hall.

7. The defendants point in particular to two letters I sent to Mr. McGovern in May 2003. In the first of these letters, I reiterated Ms. Hall's position that she had no intention of abandoning her employment at Verizon. I advised Mr. McGovern that Ms. Hall was evaluating Verizon's offer of a transfer to a position in the Springfield Central Office and I summarized Ms. Hall's initial concerns as she communicated them to me regarding this proposed transfer. Chief among Ms. Hall's concerns which I passed on to Mr. McGovern was that she would continue to have interaction with her former first and second level supervisors and the former co-worker who cut her hair with a pair of needle nose pliers. I also related Ms. Hall's concern about information obtained by her about extremely threatening and offensive graffiti inscribed on the inside of a Verizon "cross box" in Springfield, as well as information about the difficulties encountered by other African American employees in getting Verizon supervisors and managers in Springfield to take any action to remove this graffiti. I also advised Mr. McGovern that Ms. Hall was awaiting receipt of further medical documentation related to Verizon's

demand that she return to work in the Springfield Central Office, and I reassured him that I would contact him immediately upon receipt of this additional medical documentation.

8. In the second letter appended to the defendants' pending motion, I transmitted to Mr. McGovern the additional medical documentation referred to in my earlier letter, and I highlighted certain of the conclusions expressed by Ms. Hall's psychiatrist in the enclosed report. I further summarized certain of the reasons expressed by Ms. Hall and her psychiatrist for Ms. Hall's inability to return to work in Verizon's Springfield Central Office. The balance of the letter (which has been redacted and would not be disclosed to a jury should the letter be admitted into evidence) is devoted to a presentation of an initial proposal for the settlement of Ms. Hall's claims for damages.

9. If the parties are unable to stipulate to the sending and receipt of the above correspondence, I would testify at trial only to the undisputed fact that I prepared and sent the letters. This is the only information about which I possess independent knowledge. There is no dispute in this matter that the defendants received the letters.

10. The letters would **not** be offered to prove the truth of any factual information related to Mr. McGovern in the letters. My letters to Mr. McGovern and his responses to me would be offered only to show the course of the interactive dialogue (such as it was) between Ms. Hall and the defendants with respect to Ms. Hall's need for an appropriate accommodation, and to show that the defendants were on notice as to Ms. Hall's position with respect to the singular accommodation of her disability offered by the defendants. In particular, my letters will be offered to show that: 1) the

defendants were placed on notice that Ms. Hall had not abandoned her employment; 2) the defendants were placed on notice that Ms. Hall had no intention of abandoning her employment; 3) the defendants were on notice that both Ms. Hall and her psychiatrist believed that the one transfer being offered to her by the defendants would have an adverse psychological impact upon Ms. Hall; and 4) the defendants were made aware of certain of the reasons underlying Ms. Hall's decision and her psychiatrist's medical judgment that she would be unable to tolerate a transfer into that particular position.

      11.    Direct evidence of the truth of any facts conveyed in my letters to Mr. McGovern will be provided in the form of testimony from witnesses who have personal knowledge of these facts. In particular, Ms. Hall will testify about the facts underlying her reasons for rejecting the one-time, take-it-or-leave-it offer by Verizon of a transfer to the Springfield Central Office. Ms. Hall's treating psychiatrist will testify about the medical basis for his conclusion that Ms. Hall would not have been able to tolerate the stress she would have likely experienced had she accepted this offer and begun working in the Springfield Central Office. Ms. Hall will testify about her knowledge of the likely frequency with which she would have had ongoing contact with her former supervisors and the former co-worker who cut her hair with a pair of needle-nose pliers had she taken the Springfield Central Office position. She will also testify about the information she obtained regarding the cross box graffiti and the unaccountable delays by Verizon managers in responding to repeated complaints from African American employees about the graffiti. She will testify about how she obtained this information and the impact that this information had on her ability to return to work in the Springfield Central Office position. The substance of the above testimony from Ms. Hall has already been

communicated to the defendants in Ms. Hall's deposition testimony and in a detailed affidavit submitted in support of her opposition to the defendants' motion for summary judgment in this matter. Her affidavit was filed with the court and entered on the Civil Docket as entry number 36. Her testimony during the course of her oral deposition and the statements contained in her affidavit are entirely consistent with the facts recounted in my letters to Mr. McGovern regarding Ms. Hall's reasons underlying her objections to the transfer to the Springfield Central Office position.

12. With respect to the underlying facts surrounding the cross box graffiti, Greg Drew, a former African American Outside Technician for the defendants, will testify from his own direct personal knowledge about discovering and photographing the graffiti. He will testify that only Verizon employees had access to the inside of the cross box where the graffiti was located. He will describe his unsuccessful attempts to get several levels of Verizon supervisors and managers to respond to his complaints about the graffiti, and he will testify that this problem was not ultimately resolved until he personally took it upon himself to remove the graffiti. As with the substance of the testimony which will be offered by Ms. Hall, the substance of Mr. Drew's testimony has already been communicated to the defendants in a detailed affidavit also submitted in support of Ms. Hall's opposition to the defendants' motion for summary judgment in this matter. Mr. Drew's Affidavit was filed with the court and entered on the Civil Docket as entry number 37.

13. The defendants were on notice that Mr. Drew was a fact witness in this case at least since August 20, 2004 when they were served with the Plaintiff's Initial Disclosures pursuant to Fed.R.Civ.P. 26(a)(1). If the defendants really wanted to

5

explore the facts relating to the cross box graffiti and the failure of their Springfield-based managers to deal with such demeaning and threatening material in a timely manner, they could have taken the oral deposition of Mr. Drew. They did not to do so.

14. I recognize that the voluntary disclosure in my letters of Ms. Hall's communications with me regarding her reasons for being unable to take the Springfield Central Office position might be construed to be a limited waiver of the attorney-client privilege with respect to the content of the letters. Consistent with a limited waiver of the privilege, the defendants could have inquired at Ms. Hall's deposition about the information she related to me and which I then summarized in my letters to Mr. McGovern. They chose not to ask Ms. Hall any questions about her communications with me related to the content of the letters.

15. Within the confines of a limited waiver of attorney-client confidences and subject to appropriate attorney work product parameters, the defendants could have taken my deposition to determine whether I had any relevant first hand knowledge of any factual information conveyed in my letters to Mr. McGovern. They did not do so.

16. Had they taken my deposition, they would have learned that I have no independent knowledge of any of the facts material to the issues in this case conveyed to Mr. McGovern in my letters. I have no personal knowledge regarding any of the facts surrounding the cross box graffiti or efforts to have it removed. Nor do I have any personal knowledge regarding the facts underlying Ms. Hall's expressed reasons for rejecting the ultimatum from the defendants that she return to work in the Springfield Central Office or face termination of her employment.

17. As Mr. McGovern can no doubt attest, I had no oral communications with

him. All communications between Mr. McGovern and me were conducted in writing so that there could be no dispute about the content of these communications.

18.     In my role as Ms. Hall's legal representative, I did what attorneys routinely do during the course of a legal dispute: I conveyed the position of my client to the person representing the opposing party and I recited certain facts in support of that position as those facts were presented to me by my client and as reflected in supporting documentation.

19.     The contention by the defendants that my performance of this role somehow converts me into a necessary witness in this case and thus requires my disqualification is ludicrous bordering on frivolous.

20.     The timing of the defendants' motion to disqualify me and the utter lack of merit to the motion suggests a troubling element of bad faith which justifies an award of sanctions pursuant to 28 U.S.C. § 1927.

21.     The defendants have been aware for approximately four years that I penned the letters which form the basis for their present motion. There is no dispute that the defendants received these letters in April and May of 2003.

22.     The defendants have known for over two and a half years that the plaintiff was likely to rely on the correspondence between Mr. McGovern and me in support of her claims. In the plaintiff's Initial Disclosures served on the defendants on August 20, 2004, the plaintiff listed this correspondence among the "Categories of Documents Which May Be Used to Support Plaintiff's Claims."

23.     Under these circumstances, there can be no possible justification for waiting until less than three months before the scheduled trial in this matter to file a

motion to disqualify me.

24.     I further state that the facts set forth in this affidavit are made upon my own personal knowledge and belief and so far as upon belief, I believe those facts to be true.

Signed under the pains and penalties of perjury on this 11th day of May, 2007.

      /s/ Hugh D. Heisler
Hugh D. Heisler